F. W. ALLEY v. CHARLOTTE PIPE AND FOUNDRY COMPANY.

(Filed 8 May, 1912.)

1. **Master and Servant — Safe Appliances—Negligence—Delegated Authority.**

    It is the duty of the master to furnish the servant reasonably safe appliances with which to do the work, which it cannot delegate to another servant and escape liability.

2. **Same—Res Ipsa Loquitur—Substantial Evidence.**

    When one engaged in a foundry, and in the scope of his employment is injured by an explosion of gas which drove the molten metal out of an arbor which he was using, latently defective and made by another employee, who was unskilled in such work, which was known, or should have been known, to the master by the exercise of reasonable care. the negligence of the master in employing, or continuing to employ, the unskillful servant to make cores for the use of other employees in their work is actionable negligence.

3. **Same — Inexperienced Employee — General Reputation—Expert Evidence.**

    Upon the issue of defendant's negligence in employing an unskillful core-maker for making cores to be used in a foundry, with evidence tending to show that plaintiff was injured while handling molten iron with one of them, by reason of a latent defect therein, evidence is competent which tends to show the reputation of the core-maker for inefficiency, by those who are

acquainted with it; and, also, the opinions of experts in that line of work as to whether, under the evidence, the cores were properly made.

4. Master and Servant — Personal Injury — "Probable" Results— Words and Phrases—Expert Evidence—Measure of Damages.

Upon evidence tending to show that the plaintiff was injured by the defendant while working in a foundry with an imperfect appliance furnished him for the purpose, it is competent for his physician to testify, on the measure of damages, that the character of the wound inflicted was such that an eating cancer was "liable" to ensue, the word "liable" as used by him being in the sense of a "probable" consequence, and not speculative; and it was also competent as tending to prove the acute mental suffering caused by the injury.

5. Instructions—Negligence—Phases of Evidence—Harmless Error.

When, under certain phases of the evidence, the jury should have been instructed that the defendant was guilty of negligence, if they found the evidence to be true, it is not error of which the defendant can complain, that the charge left to the determination of the jury whether or not all the facts constituted negligence, the burden being put upon the plaintiff, and the charge being otherwise correct.

APPEAL from *Lyon, J.,* at January Term, 1912, of MECKLEN-BURG.

Civil action. These issues were submitted:

1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

2. Did the plaintiff voluntarily assume the risk and danger of being injured in the manner in which he was injured as an incident of his employment? Answer: No.

3. Did plaintiff, by his own negligence, contribute to his injuries, as alleged in the answer? Answer: No.

4. What damages, if any, is the plaintiff entitled to recover of the defendant? Answer: $6,000.

From the verdict and judgment the defendant appealed.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Brown.*

*T. L. Kirkpatrick, Osborne, Lucas & Cocke, and Miller for plaintiff.*

*Burwell & Cansler, Davis & Davis, for defendant.*

BROWN, J.   The plaintiff was a pipe molder for several years in defendant's foundry. ' On 28 November, 1910, while engaged in molding, he was injured by the explosion of a core, which caused a stream of molten iron from the arbor to strike plaintiff's foot, set his trousers afire, and seriously burn him.   This core had been made by a core-maker named Nance, and furnished to plaintiff for use in connection with the arbor in molding.

The principal negligence alleged is in providing an imperfect core, the defects in which were not apparent, and in providing an unskillful and deficient workman to make the core supplied to plaintiff.

There are twenty-one assignments of error set out in the record and discussed in the briefs.   We deem it unnecessary to review them all.

1. The motion to nonsuit was properly denied.   It is unnecessary to discuss the doctrine of *res ipsa loquitur* as applicable to this case.   The plaintiff need not rely on it.   There is substantive evidence of negligence for which the defendant may properly be held liable.

There is evidence tending to prove that plaintiff was injured by an explosion of gas which drove the molten iron out of the arbor on plaintiff; that this arbor was made by defendant; that the explosion was caused by a defective core furnished plaintiff by defendant; that plaintiff could not well have discovered the defect; that the core was made by Sam Nance, an incompetent and unskillful core-maker, and there was evidence that defendant had full knowledge of Nance's incompetency and continued him as core-maker notwithstanding.   There is evidence from which it may be clearly inferred that the core was defective when it left Nance's hands.

It is now elementary learning that the master must furnish the servant a reasonably safe place to work in and reasonably safe and properly constructed appliances to work with, consistent with the character of the work.

And it is likewise true that if the defendant, with full knowledge of Nance's incompetency, continued to permit him to make cores for the use of other workmen employed in a dan-

gerous business, the defendant is liable for Nance's negligence, for in that particular Nance represented the master, and was discharging a duty the defendant itself owed to its servants. *Tanner v. Lumber Co.,* 140 N. C., 475; *Barkley v. Waste Co.,* 147 N. C., 585.

2. It is contended that the court erroneously received evidence relating to Nance's reputation as a core-maker. Three witnesses, found by the court to be experts, declared that Nance was an incompetent core-maker. One said that he ripped through his work and did not half make his cores; rings in them and soft places. We think it was proper to admit the opinion of experts upon that disputed question, as well as to put in evidence Nance's general reputation in his particular specialty. *Ives v. Lumber Co.,* 147 N. C., 306.

In *Lamb v. Littman,* 132 N. C., 978, it is held competent to prove the reputation of a man's special fitness for any employment in which he is engaged. *R. R. v. Jewel,* 46 Ill., 99.

Mr. Wigmore says, sec. 1894, Work on Evidence: "Testimony to professional skill concerning professional persons qualified to know is generally regarded as receivable."

As one or several acts of negligence would not necessarily make a workman an incompetent servant, we think the best rule is that a servant who is familiar with the servant complained of, and who is competent to judge of his competency and the character of his work, should be permitted to give his opinion of it.

3. It is assigned as error that the court permitted the physician to state that the character of the plaintiff's wound was such that a sarcoma, or eating cancer, was liable to ensue. We recognize the general rule that an expert physician testifying to the consequences of a personal injury should be confined to probable consequences, but in this instance we do not think the physician indulged in pure speculation. Jones on Evidence, sec. 378. The word "liable" is defined as "exposed to a certain contingency more or less probable." Webster's Dictionary. The word was used by the witness in the sense of probable, and was doubtless so understood by the jury.

The identical phrase was used in *Montgomery v. Scott,* 34 Wis., 339, and upheld as a legitimate expression of opinion by a medical expert.

In *Kansas City v. Stoner,* 49 Fed., 209, the Court held that the plaintiff was entitled to recover for the *probable* effects of the injury, even though at the time not apparent.

We think the evidence competent also as tending to prove acute mental suffering accompanying a physical injury. The liability to cancer must necessarily have a most depressing effect upon the injured person. Like the sword of Damocles, he knows not when it will fall.

This exception relates only to the issue of damages, and if erroneous it was of little consequence, as his Honor laid down clearly the correct rule of damage, as follows:

"Plaintiff is to have a reasonable satisfaction—if he is entitled to recover—for 'loss of bodily or mental powers, or for actual suffering, both of mind and body, which are the immediate and necessary consequences of the injury."

4. The defendant excepts to the following charge: "Now, if you find from the evidence, gentlemen of the jury, that the plaintiff was injured by an explosion, throwing molten iron against his foot, and that said explosion was caused by a defective core, and you further find that said defective core was furnished to the plaintiff by the defendant, and you further find that said core was defective in its construction, and that it was constructed by Sam Nance, the core-maker, and you further find that Sam Nance was an incompetent and inefficient core-maker, and you further find from the evidence that the defendant knew that Sam Nance was an incompetent and inefficient core-maker, or that it ought to have known that fact, and you find that this is negligence, under the definition of negligence that I have given you, you will answer the first issue 'Yes'; otherwise, you will answer it 'No.'"

The only fault to be found in this charge is that his Honor left to the jury to decide whether or not all of these facts constituted negligence, when he ought to have charged that if the jury found these facts to be true, the defendant was guilty of negligence.

This is an error of which the defendant has no reason to complain. The charge put the burden of proof squarely on the plaintiff, and eliminated entirely from the case any evidence of negligence arising from the mere fact of an explosion, under the *res ipsa loquitur* doctrine.

We think it useless to discuss the remaining assignments of error. We have examined them and find them without merit. The charge of the court was a full and clear presentation of the case to the jury, and as favorable as the defendant could reasonably expect.

No error.