The plaintiff, a Florida corporation, sued to recover on a check for the sum of $1,769.35 given it by the defendant in payment for a trailerload of bananas purchased by him in Miami. The check had been put in course of collection, payment stopped by defendant at the bank on which it was drawn, and the check returned to the plaintiff with that notation. Demand was made upon the defendant for payment and declined; and no part of the check had been paid. The defendant admitted giving the check, denied it was for value, and set up the affirmative defense that there was a total breach of the contract on the part of the plaintiff in that the bananas purchased were not of the kind and quality contracted for but were so unmerchantable and worthless that he was compelled at great loss and expense to have them sold for the account of plaintiff, after notification, in order to salvage what he could of the shipment.
The plaintiff and the defendant were brought together in the contract of purchase and sale through a brokerage concern in Charlotte, North Carolina. The resulting contract, according to plaintiff's evidence, provided that the Grayson Shipping Lines (hereinafter called Grayson's), a concern engaged in importing and selling bananas in the United States brought on shipboard from producers in Guatemala, South America, to Miami, Florida, should deliver to the defendant Young for loading upon his trailer at the dock in Miami on the 7th day of January, 1947, a trailerload of bananas from a cargo to arrive on that day. The bananas were to be merchantable bananas, the stems averaging in weight 37 to 40 pounds, at 6 1/2 cents per pound, as weighed on the trailer, payment to be made as picked up by purchaser.
The vessel arrived on the afternoon of the 7th.
Mr. Young's trailer was not in Miami on the 7th, 8th, or 9th, but after telephone calls between the two firms it did arrive on the 10th, at which time the bananas were delivered, loaded upon Young's trailer, and the check given for them after the bananas had been weighed and the amount due computed on the weight at the purchase price per pound. Seven hundred thirty-five stems of bananas were delivered.
When the Young trailer arrived for the bananas, Grayson's office was called and the driver was then notified that the bananas were not at the dock since the vessel had already been discharged after having unloaded two days before, and that the bananas were being held at a railroad freight car, iced at the railroad yard of the Seaboard Railway. The *Page 82 
delivery took place there. The bananas were open to the inspection of the driver of the trailer. The check was delivered to Grayson's, put in course of collection, and returned as aforesaid.
The plaintiff's witness, Grayson, testified that the bananas shipped were in good order at the time of delivery, were of the quality, kind and weight contracted for, and a part of a shipment of 10,000 stems, or bunches, of like quality and character of the same cargo which had been distributed throughout the United States, sold and paid for without complaint.
The defendant moved that this part of the testimony be stricken out, which was declined, and the defendant excepted.
The witness described in detail the nature, character, weight of the bananas sold and delivered to the defendant for comparison with the contract stipulations.
The evidence of the defendant was to the effect that he had started his truck in ample time to arrive at Miami on the 7th of January, the time at which the contract called for delivery of the bananas; that after his truck had reached Sanford, Florida, en route to Miami, in consequence of a telephone call received from Grayson's office in Miami to the effect that the vessel containing the bananas would not reach Miami until the 8th, in order to save loss of time and waiting he caused his truck to be loaded with vegetables and returned to Asheville, figuring that he would lose only one day in the transaction and could then pick up the bananas. Actually his truck did not call for the bananas until the 10th.
On objection by plaintiff, testimony of the witness as to the telephone conversation was rejected; but while the competence of the evidence was still under discussion, the court had the jury to retire and Mr. Young was examined in their absence as to the evidence the defendant desired admitted and there stated as follows:
 "On January 6, 1947, I was in Asheville, at my place of business, when I received a long distance telephone call from Grayson Shipping Lines. I do not remember the party's name that called me. The call came in between 9:00 and 10:00 in the morning. I answered the phone. When I answered the phone the operator asked me if I was O. F. Young and I told the operator I was. The operator told me to hold the line for Miami. I held the line and she connected me with the Grayson Shipping Lines. I know that I was talking to the Grayson Shipping Lines, because the party I talked to said he was with Grayson Shipping Lines, and that he was calling me because word had been received from the boat that it would not be there Tuesday morning, that it would be Wednesday before the bananas could be loaded. I told him I had my trailer there, that I would get my trailer loaded with other produce besides *Page 83 
bananas, and that as soon as it got back I would send the trailer back to Miami for the bananas."
The record discloses that the evidence so taken in the absence of the jury was excluded; but the witness was permitted to testify that he diverted his truck from the Miami objective at Sanford, Florida, because of the telephone call from Grayson Shipping Lines. On cross-examination he testified without objection that the telephone conversation said that the bananas would not be in Miami on the 7th but would be there on the 8th. And again on plaintiff's further cross-examination, defendant testified as follows:
 "Q. He called you on the 9th and told you that the bananas were there?"
 "A. No, on Monday he said that the bananas would not be there on Tuesday morning."
"Q. This was on the 6th?"
 "A. Yes, he said that they wouldn't be there Tuesday, but on Wednesday. He said the bananas would be there Wednesday."
Plaintiff introduced evidence of Strulson, who was then handling the matter for Grayson's, that the Young trailer not having arrived, the bananas were removed from the boat and held for him at his instructions in a "reefer" railroad car equipped with ice bunkers on both ends, especially made for the shipment of bananas. That he called Mr. Young, had a party to party phone conversation with him while the bananas were still on the boat, told Mr. Young that his trailer had not arrived and asked what he wanted them to do and was informed that the trailer was on the way and asked that the bananas be held for him. Strulson personally supervised the loading into the car or "reefer" on the night of January 7, 1947, at which time the bananas were green and in good condition. At that time witness stated, the stems averaged between 37 and 40 pounds. They were not opened, were not poorly filled, were not thin, and their color was green. There were no broken surfaces.
The trailer did not arrive on January 7 or January 9. On the morning of January 9, witness telephoned Young and told him that the trailer had not yet arrived; that he felt that they should dispose of the fruit because it might spoil if continued to be held; and Mr. Young insisted that the fruit be held for him.
The trailer on which the bananas were loaded was refrigerated on sides, top and bottom, but the refrigeration was cut off at Augusta, Georgia, on the trip back to Asheville, as being unnecessary. They arrived at Asheville on the 12th. *Page 84 
The defendant introduced a number of witnesses, professedly experienced in dealing in that kind of fruit, whose testimony was to the effect that the bananas were poor in quality, small, thinly spaced, the bunches open, averaging per bunch from 32 to 33 pounds; largely small or "square" bananas showing evidence of bruising from handling; and that the bananas refused to ripen evenly and properly. The local inspector from the U.S. Department of Agriculture testified that the bananas were of inferior quality, small, the bunches open and poorly filled; and that he had found Rhizopus mold, or black spot, on the bananas where they had been bruised or blackened at the ends. And certificate of an inspection made by him on the 15th day of January was introduced in evidence.
The defendant testified that the persons to whom he had proposed to sell the bananas (they are named in the evidence) refused to take them and that he could not dispose of them. That after notifying the plaintiff of the situation, and some negotiation with it to adjust the matter, all of which failed, he got a local dealer in fruit, the Ideal Fruit Company, to place the bananas in their banana room to the end that they might be saved and prepared as far as possible, and sold for account of the plaintiff as stated above. Testimony of O. G. Farlow, in whose establishment the bananas were stored, stated that they were of a poor quality and failed to ripen satisfactorily as they should have done under the customary conditions in the banana room.
An account was kept of the transactions of this concern and sale by them, showing a small balance which defendant asked to be applied upon his counterclaim against the plaintiff.
The following issues were submitted to the jury and answered as indicated:
 "1. Did the plaintiff and the defendant enter into a contract for the delivery of a trailer load of bananas, averaging 37 to 40 pounds per stem? Answer: Yes.
"2. Did the plaintiff breach the contract? Answer: No.
 "3. What amount, if anything, is the plaintiff entitled to recover of the defendant? Answer: $1,769.35, with no interest thereon."
(Exceptions to the instructions pertinent to the decision will be found in the opinion.)
Upon the coming in of the verdict the defendant moved to set it aside for errors committed during the trial. The motion was declined, and the defendant excepted. To the judgment rendered thereupon for the amount claimed by the plaintiff, without interest, the defendant objected, excepted, and appealed. *Page 85 
The record contains a large number of exceptions, typical of a trial of this kind, which we find it impossible, for want of space, to treat in detail. We confine discussion to the points urged upon us as more important.
The objection that defendant was denied the benefit of the telephone conversation between him and representatives of the plaintiff, i.e., between Asheville and Miami, would require more intimate discussion of that interesting subject except for the fact that the conversation was substantially repeated at least twice by defendant on plaintiff's cross-examination which, in our opinion, cured the error, if any had occurred.
There may be some technical error in the statement of the witness that the balance of his cargo of the same shipload had been sold to various concerns throughout the United States and paid for without complaint, but we are not sufficiently satisfied that it was prejudicial to the defendant as to justify us in holding it for reversible error.
The appellant excepts to the charge as omitting substantial contentions of the defendant and over-emphasizing the contentions of the plaintiff; and that the array, in reality, amounts to a strong argument for plaintiff's side of the controversy, and an expression of opinion by the court; and that there were several misstatements of the evidence.
No adequate reason is given why the exceptive portions of the charge, challenged for omission of defendant's contention or containing misstatements of the evidence, do not come under the rule requiring the matter to be called to the attention of the court at the time, in order to preserve the exception. S. v. Sutton, post, 244; S. v. McNair, 226 N.C. 462,38 S.E.2d 514.
As to the other objection, that the method and manner of the array of contentions amounted to an expression of opinion, if as defendant suggests, it must be found "from the four corners" of the charge, — and it is difficult to see how else the imbalance could be perceived — careful reading leaves us with the impression that the exception does not point to reversible error.
Appellant points out, however, that the following instruction openly assumed a fact to exist which was a jury question — whether the Grayson ship had arrived on the 7th — and should be held for reversible error:
 "Now, gentlemen, if the bananas when they reached Miami on the ship, on the date of the 7th, when they were unloaded there, were of the character and kind of bananas that the plaintiff sold to the defendant, but due to the defendant's failure to get his truck *Page 86 
there, and in view of the defendant's failure to receive the bananas until the 10th, the plaintiff would not be responsible for any loss or deterioration in character or kind of bananas that were delivered to the plaintiff on the 10th, if they had deteriorated and were not of the kind and character of bananas that were delivered from the ship on the 7th or 8th, or whenever it was unloaded, because, under the contract the bananas were to be delivered to the defendant f. o. b. in Miami at the time that the ship arrived."
This passage is not ideally clear, but sufficiently so to give the jury to understand the proposition, hypothetically put, that if the deterioration in the condition of the bananas was due to a fault of the defendant in delaying their receipt from the time they should have been picked up — from the "7th to the 10th," "or on the 7th or 8th, or whenever it was unloaded," plaintiff would not be responsible for the change in condition. This instruction taken in its entirety, leaves the question of the arrival of the ship open by rephrasing the point. The assignment of error pointed out is unsubstantial, in view of the whole charge.
We are unable to sustain the assignments of error discussed, or others called to our attention, after careful examination, and we find
No error.