MISS BONNIE ETHEL DICKSON v. QUEEN CITY COACH COMPANY AND
JAMES Q. LINKER

and

MRS. J. T. CHAPPELL v. QUEEN CITY COACH COMPANY AND JAMES Q.
LINKER.

(Filed 2 February, 1951.)

**1. Negligence § 19d—**

On motion to nonsuit on the ground of intervening negligence, the evidence must be considered in the light most favorable to plaintiff.

**2. Carriers § 21b—Nonsuit on ground of intervening negligence held properly denied in passengers' actions for negligent injury.**

The evidence tended to show that defendant's bus was being operated at an excessive and unlawful speed, that the driver was watching a vehicle immediately in front of him which was turning right at the intersection, that the driver swerved to the left to avoid this vehicle, and, 25 feet past the intersection, collided with another vehicle approaching from the opposite direction which had turned to its left, slightly over the center line of the highway, in order to go around a vehicle in front of it which was waiting to make a left turn into the intersection, and that after the collision the bus traveled some 300 feet, ran off the highway and stopped at the foot of an embankment, causing injury to plaintiffs, passengers in the bus, with further evidence that the driver of the bus made no effort to apply the hand brake, although he testified it was in good condition. *Held:* Defendant carrier's motions to nonsuit on the ground of intervening negligence of the driver of the other vehicle involved in the collision, were correctly denied.

**3. Negligence § 7—**

Intervening negligence of a third party will not insulate defendant's negligence unless it entirely supersedes the operation of the negligence of the defendant, so that the intervening negligence, without the negligence of the defendant, produces the injury.

**4. Automobiles § 18i—Instruction held not prejudicial upon the evidence in this case.**

An instruction as to the law in passing a vehicle at an intersection when the left side of the highway is not free of oncoming traffic for a sufficient distance to permit the movement to be made in safety, *is held* not prejudicial upon the evidence in this case which showed that the driver of defendant's bus, traveling upon a four lane highway, had suddenly swerved to the left to go around a car in front of him, which was turning right at the intersection, and completely diverted his attention from the direction in which he was traveling, and collided on his right of the center of the highway with a vehicle approaching from the opposite direction 25 feet after the bus had cleared the intersection.

DICKSON v. COACH CO. and CHAPPELL v. COACH CO.

**5. Appeal and Error § 6c (6)——**

An exception to the statement of the contentions of the opposing party will not be considerd when the matter is not brought to the court's attention by the aggrieved party in time to afford opportunity for correction.

**6. Damages § 13a——**

An instruction for the jury to answer the issue of damages in the amount it found justified from the greater weight of the evidence will not be held erroneous as inadequate when the court follows such instruction by a correct charge as to the measure of damages.

**7. Damages § 11——**

While plaintiffs' loss of time from their occupation must be limited to that which has occurred up to the time of trial, subsequent loss of time being included in a recovery for decreased earning capacity, where plaintiffs' evidence discloses that they were public school teachers and had contracts to teach for the year ensuing after the accident on 2 June, and that the cases were tried in June of the year following the accident, during which time they had not recovered sufficiently to return to work, evidence of their loss of salary for the school year is properly admitted.

**8. Same——**

Expert medical testimony as to the probable cost of surgical operations and medical attention still needed by plaintiffs at the time of trial *is held* without error.

**9. Evidence § 48——**

A medical expert may testify as to the probable cost of further surgical operations needed by plaintiffs at the time of trial.

APPEAL by defendants from *Crisp, Special Judge,* Extra May 29th Civil Term, 1950, of MECKLENBURG.

Civil actions to recover damages for personal injuries, consolidated for trial.

The plaintiffs, fare-paying passengers, were seriously and permanently injured on 2 June, 1949, when the bus of the defendant Queen City Coach Company ran off the highway and down an eight-foot embankment and came to rest approximately 300 feet from the point of and after a collision with another vehicle.

The usual issues of negligence and damages were submitted to and answered by the jury in favor of the respective plaintiffs. And from the judgments entered on the verdicts, the defendants appeal and assign error.

*G. T. Carswell and Shannonhouse, Bell & Horn for plaintiff, Miss Bonnie Ethel Dickson.*

*Helms & Mulliss, Robinson & Morgan, and James B. McMillan for plaintiff, Mrs. J. T. Chappell.*

*McDougle, Ervin, Horack & Snepp for defendants.*

DENNY, J.   The evidence tends to show the following facts: The collision occurred on Wilkinson Boulevard near the intersection with Green Boulevard, about one block West of the Charlotte City limits. Wilkinson Boulevard is an extremely heavily traveled public highway. It has four lanes and is 37 feet wide.  The maximum speed limit on this highway in that area is 40 miles per hour.  The area is a business and industrial district.   Green Boulevard, a paved highway 28 feet wide, intersects Wilkinson Boulevard to the North, and at the point of intersection the paved portion or mouth of Green Boulevard is 65 to 70 feet wide.

The Queen City bus, operated by the defendant James Q. Linker, with the plaintiffs aboard, was traveling west on Wilkinson Boulevard, between 8:15 and 8:30 p.m., on 2 June, 1949, according to the plaintiffs' evidence, at a speed of between 60 and 65 miles per hour.  A car headed west was parked on the north side of Wilkinson Boulevard, a foot or so from the pavement and some 10 or 15 feet east of the intersection.  A car operated by C. B. Wilkinson, eastbound, had stopped in the intersection and Linker, driver of the bus, saw Wilkinson signal for a left turn into Green Boulevard in front of the oncoming bus some 300 feet or so before the bus reached the intersection.  Immediately ahead of the bus the driver of a westbound car traveling 10 or 15 miles per hour gave a signal for a right turn into Green Boulevard.  The signal was given when the bus was 75 or 100 feet away, and the car started to turn off when the bus was about 50 feet from it.  According to the plaintiffs' evidence, the bus swerved suddenly to the left and "immediately after the swerving" the witness heard a noise about the center of the highway, from the front of the bus.  The bus collided with an eastbound car operated by one Hairston, which had pulled up behind the Wilkinson car.  The left front wheel of the Hairston car was knocked off and the axle was imbedded in the asphalt something like three-quarters of an inch, four feet north of the center line between the east and west traffic lanes, but slightly over half of the Hairston car was on its right-hand side of the highway going towards Charlotte.  Some of the debris from the wreck, such as oil, mud and glass, was on both sides of the center line of the highway.  The point where the axle of the Hairston car was buried in the asphalt was approximately 25 feet west of the western edge of Green Boulevard, and no vehicle going west was immediately in front of the bus in either of the westbound lanes, when the collision with the Hairston automobile occurred.   After the bus collided with the Hairston car, it ran a short distance up the road, then cut to the left at an angle of about 45 degrees across the left side of the highway, plunged off an eight-foot embankment and came to rest approximately 75 feet from the edge of the highway, 300 feet from the point of the collision.  The plaintiffs were injured by

the sudden impact of the bus when it stopped at the bottom of the depression after leaving the highway.

The defendants' evidence tends to show that immediately before the collision the Queen City bus was being operated astride the line between the passing lane and the extreme right lane, headed towards Gastonia, at a speed of about 35 or 40 miles per hour; that the driver of the bus, James Q. Linker, was watching the driver of the car who had given a signal to turn right into Green Boulevard. Linker testified that he "heard the tires hollering on an automobile" and he "glanced at the side" and the automobile hit the bus on the left-hand side and damaged the steering gear to such an extent he could not control the bus. . . . "I did not see the car that I had the collision with until about the time of the collision. . . . I was watching the man that was making the right-hand turn and this other fellow hit me." The driver of the bus further testified he never attempted to use the emergency brakes after the collision with the Hairston car, but tried to keep the bus in the road; that the emergency brakes were in good condition, and the regular brakes were in good condition before the accident; that after the accident he couldn't get the brakes on because his foot was caught between the brake and the accelerator; that he was not sure whether the brakes were damaged or not. "The tires on the bus were in good condition. It is my opinion if I had applied the brakes that traveling about 35 miles an hour I could have stopped, using the power brakes, in 75 feet." Walter E. Byers, a passenger on the bus and a witness for the defendants, testified: "There was an eastbound vehicle on Wilkinson Boulevard, (which) had either stopped or very nearly come to a stop, attempting a left turn into Green Boulevard off Wilkinson, and as the bus approached the intersection a vehicle came up traveling in the same direction as this automobile that was attempting to turn left into Green Boulevard . . .; I heard the squeal of rubber on pavement. I was looking out the windshield and I saw this vehicle approaching going east swing around to the left of the car that was stopped . . . and come over into the westbound section of Wilkinson Boulevard. . . . I saw this car coming from across the center line 75 to 100 feet away from the bus."

The defendants assign as error the failure of the court below to grant their motion for judgments as of nonsuit. They insist that the conduct of Hairston caused the collision which resulted in the injuries to the plaintiffs, and that the negligence of the driver of the Queen City bus, if any, was insulated by the negligence of Hairston, citing *Butner v. Spease*, 217 N.C. 82, 6 S.E. 2d 808, and similar cases. These authorities are not controlling on the facts disclosed by the record on this appeal. On the contrary, we think when the evidence adduced in the trial below is considered in the light most favorable to the plaintiffs, as it must be

on motion for judgment as of nonsuit, it is sufficient to withstand such motion. *Riggs v. Motor Lines, ante,* 160; *Atlantic Greyhound Corporation v. McDonald,* 125 Fed. 2d 849. The identical question presented by this assignment of error was considered and disposed of adversely to the defendants in an opinion written by *Barnhill, J.,* in *Riggs v. Motor Lines, supra,* in which he discusses intervening and concurring negligence and the effect of such negligence with respect to proximate cause, citing numerous authorities.

In the case of *Atlantic Greyhound Corp. v. McDonald, supra,* the bus collided with an automobile and the steering apparatus was broken as a result of the collision and the air was let out of the airbrakes so that they would not work; but the hand brake with which the bus was provided was in good condition and no effort was made to use it. The bus proceeded down the road for 124 feet, went 50 feet across a soft shoulder, climbed a six foot embankment to the west of the highway, went 70 feet further, crashed into a signboard and overturned, injuring the plaintiff. According to the evidence, just before the collision with the automobile the driver of the bus rose in his seat for the purpose of adjusting his trousers. *Parker, J.,* speaking for the Fourth Circuit Court, in passing on the identical question which is now before us, said: "The excessive and unlawful speed on a narrow pavement where construction work precluded the use of one of the shoulders, the failure to slow down when approaching an oncoming car in the dangerous situation thus presented, the diversion of attention of the driver by the adjustment of his garments while in such a situation,—all of these were circumstances from which the jury might reasonably have inferred that the collision and resulting injury to plaintiff were due in part, at least, to the failure of the driver of the bus to use the high degree of care required of one to whom a bus load of helpless passengers had intrusted their safety. When to this is added the failure to use the hand brake to arrest the wild flight of the bus after the collision had occurred, there can be no question as to the propriety of submitting the question of negligence to the jury."

In the instant case, according to the evidence of the plaintiffs, the bus was being operated at an excessive and unlawful speed, and according to the defendants' evidence, the driver of the bus was not looking in the direction in which he was traveling until a moment before the collision, but was watching a car that was making a right-hand turn into Green Boulevard—this evidence, together with the fact that no effort was made to apply the hand brake while the bus proceeded 300 feet after the collision with the automobile, and then stopped so suddenly as to inflict the injuries sustained by the plaintiffs, entitled the plaintiffs to have their cases submitted to the jury.

It is well settled in this jurisdiction, that in order for the intervening negligence of a third party to insulate the negligence of a defendant, the intervening negligence must entirely supersede the operation of the negligence of the defendant, so that the intervening negligence, without the negligence of the defendant, produced the injury. *Riggs v. Motor Lines, supra; Butner v. Spease, supra; Hinnant v. R. R.,* 202 N.C. 489, 163 S.E. 555; *Ballinger v. Thomas,* 195 N.C. 517, 142 S.E. 761; *Harton v. Telephone Co.,* 141 N.C. 455, 54 S.E. 299.

The defendants except and assign as error that portion of the charge in which the trial judge instructed the jury as follows: ". . . if you find from the evidence and by its greater weight that the defendants, in the operation of their said bus, negligently undertook to overtake and pass another vehicle proceeding in the same direction, at an intersection, that that would constitute negligence on the part of the driver of the bus, and if you further find that the driver of the bus drove the bus to its left side of the highway when the left side of the highway was not free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety, the court charges you that that sort of conduct, if you find that to be the fact from the evidence and by its greater weight, would constitute negligence on the part of the driver of the bus."

There is evidence to support the inference that in passing a slow moving vehicle which was turning into Green Boulevard, the bus came in such close proximity to it that the driver suddenly swerved it to the left, and considered his proximity to such car to be of sufficient importance to divert his attention from the highway, in the direction in which he was traveling, until a moment before the collision between the bus and the Hairston car. Consequently, we do not think the instruction with respect to passing a vehicle at an intersection, even on a four lane highway, in the light of the evidence disclosed by this record, was prejudicial. The further instruction with respect to driving the bus on the left side of the highway when the left side of the highway was not free of oncoming traffic, was correct as an abstract statement of the law and would seem to have been prejudicial if the bus and the Hairston car had collided on the defendant's side of the road while the bus was passing the car in the intersection of Wilkinson and Green Boulevards. However, the collision between the bus and the Hairston car did not occur in the intersection, but occurred at or near the center of the highway 25 feet west of the western edge of Green Boulevard. Therefore, in our opinion this instruction was not sufficiently harmful or prejudicial to justify disturbing the verdicts found by the jury in the trial below.

The defendants also except and assign as error certain portions of the charge with respect to the plaintiffs' contentions, on the ground that the contentions were not supported by the evidence. These exceptions are

DICKSON *v.* COACH CO. and CHAPPELL *v.* COACH CO.

without merit. The record discloses that the trial judge at the close of his charge made inquiry as to whether any further instructions were desired. Counsel for the defendants replied: "No, sir, that's all right." Whereupon, the court made further inquiry as to his statement of the evidence and the contentions. To this inquiry there was no response.

It is well settled that if the trial judge in charging the jury fails to state the contentions correctly, it is the duty of the aggrieved party to call such failure to his attention, before the case is finally given to the jury, so that it may be corrected. McIntosh, N. C. Practice and Procedure, Section 580, p. 642; *Hardy v. Mitchell,* 161 N.C. 351, 77 S.E. 225; *Sears v. R. R.,* 178 N.C. 285, 100 S.E. 433; *Walker v. Burt,* 182 N.C. 325, 109 S.E. 43; *S. v. Johnson,* 193 N.C. 701, 138 S.E. 19; *Hayes v. Ferguson,* 206 N.C. 414, 174 S.E. 121; *Switzerland Co. v. Highway Com.,* 216 N.C. 450, 5 S.E. 2d 327; *S. v. McNair,* 226 N.C. 462, 38 S.E. 2d 514; *Shipping Lines v. Young,* 230 N.C. 80, 52 S.E. 2d 12.

An exception to the following portion of the charge is assigned as error: "Now, the court charges you that in answering the second issue in Miss Dickson's case (and a similar charge was given in Mrs. Chappell's case), that you will answer it in such amount as you think is justified from the greater weight of the evidence, as the evidence applies to her case."

If this were the only instruction on the issue of damages, it would certainly be inadequate. However, the trial judge in his charge to the jury followed the rule as to the measure of damages the plaintiffs were entitled to recover, if anything, as laid down by *Stacy, J.* (now *C. J.*), in *Ledford v. Lumber Co.,* 183 N.C. 614, 112 S.E. 421.

The defendants further contend it was error to permit the plaintiffs to testify on the issue of damages as to the amounts they would have received under their respective contracts as public school teachers for the 1949-50 school year, had they taught during that period; and to permit a medical expert to testify as to the probable cost of further surgical operations needed by each plaintiff as a result of her injuries.

In cases like these, the plaintiffs, if entitled to recover at all, are entitled to recover damages for all injuries, past and prospective, sustained as a result of the defendants' wrongful and negligent acts. "These are understood to embrace indemnity for actual nursing and medical expenses and loss of time, or loss from inability to perform ordinary labor, or capacity to earn money." *Ledford v. Lumber Co., supra.*

Both plaintiffs prior to their injuries had taught in the public schools of this State for many years. Both were under contract to teach during the 1949-50 school year, Miss Dickson at a salary of $341.00 per month and Mrs. Chappell at a salary of $304.00 per month. They were injured 2 June, 1949, and their cases were tried early in June, 1950. In the

meantime neither plaintiff had recovered sufficiently to return to work. And each plaintiff, according to the evidence, sustained approximately 50% permanent disability as a result of her injuries. We cannot conceive of a more accurate and less speculative method of proving damages for loss of time than to show the actual salary or wages lost, as the result of an injury, from the date of the injury to the time of the trial. The school year 1949-50 had virtually, if not actually, expired at the time of the trial below. *Johnson v. R. R.,* 140 N.C. 574, 53 S.E. 362; *Wallace v. R. R.,* 104 N.C. 442, 10 S.E. 552; *Leave v. Boston Elevated Railway,* 306 Mass. 391, 28 N.E. 2d 483; *Phoenix Baking Co. v. Vaught,* 62 Ariz. 222, 156 P. 2d 725.

"The element of loss of time is held properly to include only such loss as has occurred up to the time of trial; a subsequent loss of time is to be included in a recovery for decreased earning capacity." 25 C.J.S., Damages, Section 38, p. 511.

Likewise, the jury is entitled to take into consideration on the issue of damages, in cases like these, not only the expenses incurred for nursing, medical services, loss of time and earning capacity, mental and physical pain and suffering, but also for such further expense for nursing and medical services, as the evidence tends to show the condition of the injured party will require in the future as a result of the injury inflicted by the negligence of a defendant. *Williams v. Stores Co., Inc.,* 209 N.C. 591, 184 S.E. 496.

It is permissible for a medical expert to testify as to the probable consequences of an injury, and as to proper methods of treatment. *Dulin v. Henderson-Gilmore Co.,* 192 N.C. 638, 135 S.E. 614; *Alley v. Pipe Co.,* 159 N.C. 327, 74 S.E. 885. Consequently, it would seem to be in order for such expert to testify as to the approximate cost of the treatment. We do not think the evidence complained of was harmful or prejudicial to the defendants, particularly in view of the fact that the charge on damages laid down the proper rule for the jury to follow in determining the amount the plaintiffs were entitled to recover, if anything.

We have carefully considered all the exceptions and assignments of error set out in the record, and brought forward and argued in the briefs, and in our opinion no prejudicial error is shown; therefore, in law we find

No error.