JOHN PAUL FISHER, BY HIS NEXT FRIEND, M. M. FISHER v. WILLIAM C. ROGERS.

(Filed 14 January, 1960.)

**1. Damages § 12: Evidence § 44—**

A surgeon who has treated and operated upon a two and one-half year old child to rectify an injury to the child's nose, which depressed all the bones of the nose as a unit, is competent to testify that such injury would result in the nose being smaller in adulthood than it naturally would have been, since such testimony relates to an ultimate and certain effect of the injuries and not merely a probable or possible effect.

**2. Same—**

The general rule is that a physician testifying as an expert as to the consequences of a personal injury should be confined to certain or probable consequences, and should not be permitted to testify as to possible consequences.

**3. Appeal and Error § 41—**

The admission of testimony of a physician that certain consequences were a possibility *held* not sufficiently prejudicial to justify a new trial in the light of the immediately following competent testimony of the surgeon as to the certain or probable consequences of the injury, there being other competent testimony that the injury was permanent in nature.

**4. Damages § 13: Evidence § 44—**

It is competent for a physician, qualified as an expert witness, to testify to the effect that most persons who develop epileptic seizures as a result of trauma to the head do so within a year of the time of injury although a small percent of others will develop such seizures in later years.

**5. Appeal and Error § 41—**

The admission of testimony of the injured child's mother and father that they were given instructions as to special care to be given the child *held* not prejudicial in view of the other competent evidence, the witnesses not testifying as to what the instructions of the physician were.

**6. Damages § 15— Evidence held sufficient to warrant instruction as to damages for permanent injuries.**

Where the evidence discloses that a two and one-half year old child received injuries which depressed the bones of his nose as a unit, and also sustained a linear skull facture, that the child had begun to talk prior to the injury and did not again talk until about eight months thereafter, and that the injury to the nose would result in the nose being smaller upon the child's maturity than it would otherwise have been, which would tend to reduce the breathing capacity, together with other expert testimony to the effect that persons who developed epileptic seizures from trauma to the head developed them within a year, although a small percentage of others will develop them later, *is held* sufficient to warrant the jury in finding that the child was permanently injured and that the injuries were of such nature that they might not manifest themselves until later in the child's life, and instructions to this effect are not prejudicial.

**7. Appeal and Error § 24—**

A misstatement of the contentions of a party should ordinarily be brought to the attention of the trial court in time for correction.

HIGGINS, J., took no part or consideration in the decision of this case.

APPEAL by defendant from *Froneberger, J.,* 1 June 1959 Term, of MECKLENBURG.

Civil action for damages.

The jury found by its verdict that plaintiff was injured by the negligence of the defendant, as alleged in the complaint, and awarded him damages in the amount of $8,000.00.

From the judgment, defendant appeals.

*Carswell and Justice for plaintiff, appellee.*
*Carpenter & Webb by John G. Golding for defendant, appellant.*

PARKER, J.,   About 9:00 o'clock p. m. on 6 June 1958, the plaintiff, who was then two and one-half years old, and his sister, were sitting on the back seat of their father's automobile. The father and mother were sitting on the front seat. The father stopped the automobile on the public highway waiting for on-coming traffic to pass in order to make a left turn. He had his left arm extended out to indicate a left turn. Defendant ran into the automobile in the back with a 1950 GMC ton pickup truck, and turned it completely around across the center line in the middle of the two westbound lanes heading West on Wilkinson Boulevard.

As a result of the collision, two suits were brought: one, by plaintiff for personal injuries, and another by plaintiff's father. The two cases were consolidated for trial by consent. Judgments on both verdicts in favor of both plaintiffs were entered. Defendant did not appeal from the judgment entered against him in the father's action.

For the reason that appellant's assignments of error relate solely to matters pertaining to damages, the record states "testimony applicable to other issues in the trial is omitted."

When defendant's truck ran into the rear of the automobile in which plaintiff and his sister were sitting on the back seat, the front seat, on which their father and mother were sitting, was knocked completely loose from the floor of the automobile, and thrown into the rear on top of plaintiff and his sister. Plaintiff was under the seat. When they got the seat off plaintiff, he was on the floor. The children were pulled out of the right rear window of the automobile. When plaintiff was taken out of the automobile, he had tears in his eyes, his nose was bleeding and was completely mashed flat against his face, and he had a knot on his forehead. He was not making any sound or noise.

Plaintiff was carried from the scene in an ambulance to the emergency room at Memorial Hospital. In the emergency room he made no sound, his eyes were partially open, and he did not notice anybody. From Memorial Hospital he was taken to Charlotte Eye, Ear and Throat Hospital, where he was treated by Dr. S. S. Burns, Jr.

Dr. Burns was found by the Court, without objection, to be a duly licensed physician, and an expert witness, as to ear, nose and throat disorders and diseases. Dr. Burns examined plaintiff about two hours after he was injured in the emergency room at Memorial Hospital, and his testimony as to his condition then is in substance:

His major injury seemed to be to his nose. There were abrasions on his left wrist and lower left leg. His nose and eyes were uniformly swollen with a fresh collection of blood. All bones of the nose appeared to be depressed as a unit. The nasal airway was collapsed, partly swelling. The septum was slightly swollen, the center partition of the nose. The facial bones, other than the nasal, showed no evidence of depression. He was reasonably alert, and responded to directions, though not able to speak. He found no other injuries.

On the following day, Dr. Burns operated on plaintiff in the Charlotte Eye, Ear and Throat Hospital. He was given a light anesthesia vinthene, and the depressed nasal bones were elevated, and replaced in an elevated position. Packs of gauze were then placed in his nose to hold it up. Dr. Burns treated plaintiff the last time on 14 June 1958. At that time the nasal bones seemed to be healing well and in good position. The airway was good.

On the morning following plaintiff's injury he seemed drowsy. He did not talk or say any words. Dr. Burns testified "drowsiness indicates concussion or some injury to the brain." Dr. Burns on June 7th or June 8th referred plaintiff to Dr. William Pitts, a specialist in brain injury and treatment, because, in his opinion, plaintiff had suffered a concussion of the brain.

The mother of plaintiff, Mrs. Betty Fisher, testified prior to Dr. Burns. She testified on direct examination: the shape of his nose "is flatter and broader here and doesn't come up like it did before. He doesn't have a bridge. It sort of flattens and comes up at the end."

On direct examination Dr. Burns, a witness for plaintiff, was asked this question: "Mrs. Fisher has stated that Paul's nose, the bridge of his nose, is flatter now than it was before. Do you have an opinion as to what effect, if any, the type injury to Paul's nose for which you treated him could have on the growth and development of his nose?" Defendant's objection was overruled, and he excepted. Dr. Burns answered: "I can't give you statistics in terms of per cents but I would say that, in my experience, if there is an injury to both bones of the nose in a childhood, in later life in the adult the nose will be smaller than naturally it would have been."

Defendant assigns as error the admission of this testimony. Dr. Burns, who examined plaintiff and operated on his nose, had already testified that all the bones of plaintiff's nose appeared to be depressed as a unit, and by his operation the nasal bones were elevated. Dr. Burns testifying as an expert gave his opinion, based on his experience, as to the ultimate and certain effect of such injuries to the nose as plaintiff received. "Expert testimony of a future consequence of a prior and subsisting injury as evidence of prospective damages must

be in terms of the certain or probable and not of the possible." *Calder v. Levi*, 168 Md. 260, 177 A. 392, 97 A.L.R. 880. See 20 Am. Jur., Evidence, Section 795; *Dulin v. Henderson-Gilmer Co.*, 192 N.C. 638, 135 S.E. 614. The testimony was competent, and the assignment of error thereto is overruled. Dr. Burns immediately therafter testified, without objection, in substance that a smaller nose tends to reduce the breathing capacity.

Defendant stipulated that Dr. William Pitts is a duly licensed physician practicing in the State, and specializes in the field of neurosurgery. The Court found as a fact that he was an expert in such field. Dr. Pitts, at the request of Dr. S. S. Burns, Jr., examined plaintiff three days after he was injured in Charlotte Ear, Nose and Throat Hospital. He testified as a witness for plaintiff in substance: X-rays made at Charlotte Memorial Hospital showed plaintiff had a fracture in the frontal region of the skull and fracture of the nose. At the time he saw him, plaintiff was rather restless, and there was marked ecchymosis, blueness about both eyes and across the bridge of the nose. He had no neurological change. His diagnosis at the time was cerebral concussion, fracture of the skull, and fractured nose. He performed no operation. Plaintiff was treated by him at the hospital. After plaintiff's discharge from the hospital, he saw him in his office at periodic intervals, some six, eight or ten times, the last examination being on 13 April 1959. Dr. Pitts was then asked this question on direct examination: "Doctor, what is the likelihood of having epileptic fits as a result of this injury?" Defendant's objection was overruled, and he excepted. Dr. Pitts answered: "This is a possibility but very unlikely. Most patients who have trauma to the head develop seizures, will develop them within a year of the time of the injury, although others will develop them later but that is a very small percentage." Defendant moved to strike out the answer. The court denied the motion, and defendant excepted. Defendant assigns as error the admission of the testimony, and the denial of his motion to strike out the answer.

We recognize the general rule that a physician testifying as an expert to the consequences of a personal injury should be confined to certain consequences or probable consequences, and should not be permitted to testify as to possible consequences. *Dickson v. Coach Co.* and *Chappell v. Coach Co.*, 233 N.C. 167, 63 S.E. 2d 297; *Alley v. Pipe Co.*, 159 N.C. 327, 74 S.E. 885; 20 Am. Jur., Evidence, Section 795.

The challenged testimony consists of two sentences. Webster's New International Dictionary, Second Edition, gives the following as one definition of seizure: "3. A sudden attack, as of a disease; a fit." It

seems manifest that, when Dr. Pitts used the word "seizures," he meant epileptic fits. In the first sentence of the challenged testimony, Dr. Pitts expressed his expert opinion in the terms of possible consequences. In the second sentence, Dr. Pitts expressed his expert opinion in the terms of certainty, and such testimony is competent. Conceding that the first sentence is incompetent, and the court erred in not striking it out, such error cannot justify a new trial, in the light of his competent expert opinion expressed in the second sentence. *Johnson v. Heath,* 240 N.C. 255, 81 S.E. 2d 657; *Gaffney v. Phelps,* 207 N.C. 553, 178 S.E. 231.

Dr. Pitts testified on cross-examination in substance: Plaintiff had a linear skull fracture. There was no evidence of any particular permanent damage to the brain that he was able to determine, no focal damage. Additional time has passed without symptom.

After Dr. Pitts testified, plaintiff's mother was recalled as a witness, and testified in substance: Plaintiff's flattened nose pulls his eyes down at the center. His appearance is not like it was before he was hurt, they were not pulled down before. His mother, when she was first called as a witness, testified in substance: Plaintiff had started talking at the time he was injured. After that it was about eight months before he talked. He is talking some now. He does not talk like a normal three and one-half-year-old child, he talks like a two and one-half-year old.

Defendant assigns as error the admission of testimony by plaintiff's father, over his objection and exception, that Dr. Pitts gave instructions as to special care to be given plaintiff. He did not testify what these instructions were. Defendant assigns as error the admission of similar testimony by plaintiff's mother—there is no evidence in her or in any other testimony what these instructions were —, and of her further testimony that they carried out the instructions, that plaintiff didn't rest, and they called the doctor to get him to send phenobarbital, all over his objection and exception. These assignments of error are untenable, and are overruled.

Defendant assigns as errors these parts of the charge between the letters A and B, C and D, and E and F: "Plaintiff says and contends that the minor plaintiff, being 2½ years old at the time of the accident and just learning to talk, was injured violently or (A) injured permanently in that his skull was fractured (B), in that his nose was mashed down on his face and required an operation to have it replaced, and that, as a result of the severe impact, (C) that he would be permanently injured (D), and that you should award him permanent damages in a substantial amount. The plaintiff says and contends that the child is of such tender age he cannot speak for himself.

(E) The plaintiff says and contends that they have offered evidence tending to show that the injuries are of such a nature that they may not manifest themselves until later years of life of the minor (F) and that you should award substantial damages for the injuries to the child."

Immediately thereafter the court charged as follows, and defendant assigns as error that part between the letters G and H: "On the other hand, the defendant says and contends that, if you do come to reach that issue, that you ought to answer it in some figure commensurate with the injury that the defendant says and contends are of a minor nature; that the child's nose was broken and it has been repaired without permanent damage and that the frontal part of the child's head of that age was liable to heal up rapidly and will heal up rapidly and that no permanent injuries are manifest now since the accident has happened over a year ago, or about a year ago; (G) that if any permanent injury was to be manifested in the nature of epileptic fits or anything of that sort, it would have been manifested or come to light by now; (H) and that you ought to answer that issue in some nominal amount, if you do come to answer it at all, commensurate with the injuries that the defendant says are of a slight nature or that they are not of a permanent nature."

If defendant believed the trial judge was stating his contentions incorrectly in his charge, it was his duty to call the court's attention to the incorrectness before the case was finally given to the jury, so that it could be corrected. *In re Will of McGowan*, 235 N.C. 404, 70 S.E. 2d 189. All the evidence in the record shows permanent injury to plaintiff's nose, which will tend to reduce his breathing capacity. Considering the evidence that the child suffered in the collision a linear skull fracture, that he had started talking at the time he was injured, that after he was injured it was about eight months before he talked, that Dr. William Pitts, a specialist in neuro-surgery who treated plaintiff, expressed his expert opinion that "most patients who have trauma to the head develop seizures, will develop them within a year of the time of the injury, although others will develop them later, but that is a very small percentage," and all the other evidence, it is our opinion that such evidence would permit the jury, if they saw fit, to find that plaintiff was injured permanently in that his skull was fractured, and that such injuries are of such a nature that they may not manifest themselves until later years of plaintiff's life. Defendant's argument, that the trial judge's statement of the contentions assigned as errors presents an erroneous view of the law, or an incorrect application thereof, and that "contentions concerning damages were given where the Record did not contain evidence justi-

fying the awarding of the damages asserted," is untenable. All the assignments of error as to the statement of the contentions above set forth are overruled.

Other assignments of error are based on exceptions to the charge in respect to the measure of damage. Defendant contends "that the evidence presented in the trial below does not justify a recovery for any type of permanent injury or future damages," and therefore the charge in respect thereto is erroneous. These assignments of error are untenable. The evidence was sufficient to support a jury finding that the injured minor plaintiff suffered a permanent physical disability, impairing his earning capacity after majority, such as to warrant the instruction that the jury should consider such impairment existed in passing on the question of damages. *Hunt v. Wooten,* 238 N.C. 42, 76 S.E. 2d 326.

All assignments of error are overruled.

No error.

HIGGINS, J., took no part or consideration in the decision of this case.