150 So.2d 433 (1961)
Murray ROSENTHAL and Joseph Rosenthal, Petitioners,
v.
Paul Andrew SCOTT, Respondent.
No. 30961.
Supreme Court of Florida.
December 6, 1961.
On Rehearing February 22, 1963.
Reece & Murray, Miami, for petitioners.
David Goldman, Miami, for respondent.
O'CONNELL, Justice.
On May 21, 1960 there was filed with this Court a petition for writ of certiorari to review the decision of the District Court of Appeal, Third District, in Scott v. Rosenthal, Fla.App. 1960, 118 So.2d 555.
Subsequently, this Court entered its decision therein, Rosenthal v. Scott, Fla. 1961, 131 So.2d 480, wherein it was observed that the decision of the district court of appeal was a per curiam reversal. This Court ordered that the cause be returned to the district court of appeal with the request that that court write an opinion setting forth the theory and reasoning upon which it based its judgment of reversal.
The district court of appeal complied graciously and expeditiously with this request. Scott v. Rosenthal, Fla.App. 1961, 132 So.2d 347. The cause was forthwith returned to this Court for further consideration of the defendants' petition for writ of certiorari, wherein it was contended such decision was in direct conflict with decisions of this Court. Defendants' original petition, filed on May 21, 1960, is now considered as being directed to the opinion entered by the district court of appeal in compliance with the request of this Court. 132 So.2d 347, supra.
For convenience the facts of the case are again summarized.
Scott, the plaintiff in the court below, appellant in the district court of appeal, and respondent here, was involved in an automobile collision with the Rosenthals.
Scott, on receipt of payment for damages to his automobile from his insurer, gave the insurer an assignment and subrogation agreement as to Scott's claim for damages to his automobile.
In February 1958 the insurer brought suit, in its name, against the Rosenthals for the damages to Scott's automobile.
*434 A month later Scott filed suit against the Rosenthals for his personal injuries.
Subsequently the insurer's suit was dismissed with prejudice, after which in an answer filed to Scott's amended complaint in the personal injury suit, the Rosenthals pleaded the action for automobile damages and its dismissal with prejudice. The answer alleged that since only a single cause of action arose when Scott's person and automobile were damaged by defendants' alleged single tort, plaintiff's second action violated the rule against splitting a cause of action, which rule was laid down in Mims v. Reid, Fla. 1957, 98 So.2d 498. The Rosenthals moved for summary judgment and the trial court granted the motion on the authority of Mims v. Reid, supra.
The district court of appeal reversed the trial court. It ruled that there was no splitting of the cause of action. This ruling was elaborated upon in nowise, the court simply stating at 132 So.2d p. 348:
"* * * The majority of this court are of the view, and so hold, that under the factual situation in this case, there was no splitting of a cause of action * * *."
The court did add immediately thereafter that assuming, arguendo, that there had been a splitting of the cause of action the defendants had by their actions waived that defense.
Petitioners contend that this ruling that there was no splitting of a cause of action is in direct conflict with the decision of this Court in Mims, 98 So.2d 498, supra. We concur with this contention.
In Mims the same situation arose, with two differences.
First, in Mims the insured filed the first suit against the tort-feasor, claiming damages for his personal injuries. Subsequently he filed a second, separate suit against the tort-feasor for the use and benefit of the insurer, seeking to recover damages to the automobile. In the instant case, the insurer filed the first suit against the tort-feasors on the claim for property damages and thereafter the insured, Scott, filed his action against them for his personal injuries. We find this difference in the factual situation to be completely immaterial.
Next, in the instant case the insurer paid its insured, the respondent Scott, for the property damages to his automobile and respondent gave the insurer an assignment and subrogation agreement as to his claim against the petitioners for such damages. In Mims, however, a "loan receipt" arrangement was utilized in lieu of an actual assignment and subrogation agreement.
A loan receipt arrangement is one whereby the insurer does not actually indemnify the insured's claim under the policy for physical damages to his automobile by paying to him the amount of such damages but "advances" to him, as a loan, a sum equal in amount to such damages. This is done by the insurer in exchange for a loan receipt executed by the insured.
If it were concluded that in Mims such loan receipt arrangement did not constitute a subrogation agreement, it could then be argued that the instant case is distinguishable. But reference to this Court's opinion in Mims, at 98 So.2d 500, reveals that this Court did in fact treat the loan receipt arrangement as a subrogation agreement. The Court said therein:
"* * * Midway between these two extreme views some courts recognize the general principle that but one cause of action arises out of a single act or omission resulting in injuries to both person and property, nevertheless they permit recovery by insured for personal injury, under some circumstances at least, irrespective of the prior institution of a suit by an insurer who is subrogated, as in this case, to the rights of insured with respect to property damage. * * *" (Emphasis supplied.)
*435 It thus appears that in Mims this Court considered and rejected the exception to the one-cause rule which some jurisdictions recognize where an insurer has a subrogation right against the tort-feasor.
It also can be derived from Mims that therein this Court announced its intention to follow the so-called majority rule that only one cause of action arises out of a single tort committed on an individual, even though that tort results in damages to both the person and to his physical property.
The decision of the district court of appeal in the instant case that there was no splitting of a cause of action is therefore in direct conflict with Mims. In Mims we said only a single cause of action arises out of such a tort and the district court of appeal in the instant case has ruled in effect that two causes of action arose from a like tort.
We have again considered the point involved in the Mims case and in this and have concluded that we should continue to adhere to the so-called majority rule. We thereby again reject the minority rule and the "subrogation" exception to the one-cause rule for the same reasons set forth in the authorities cited in the Mims case.
As a matter of interest, we note that this same district court of appeal adhered to Mims v. Reid, 98 So.2d 498, supra, in Titus v. Emmco Ins. Co., Fla.App. 1959, 109 So.2d 781.
As previously noted, the district court of appeal also ruled that assuming, arguendo, that there had been a splitting of the cause of action, such defense had been waived by the actions of the defendants, petitioners here. The court, at 132 So.2d 348, said:
"We feel it was incumbent on the Rosenthals, who were parties defendant in both actions, and simultaneously defending these actions, to come forth at the first opportunity after gaining knowledge of their pendency, and seek to abate one or the other of the actions. Having failed so to do, they should now be estopped to urge the abatement of the action after judgment of dismissal in the first action. * * * Although we recognize the similarity of a plea which seeks to bar a pending action on the theory of splitting causes of action, and a plea of res judicata, nevertheless, we are not confronted with the application of the latter because the Rosenthals have not attempted to plead the judgment in the civil court of record as a bar to the action in the circuit court. The Rosenthals simply sought an abatement of the action in the circuit court under the theory announced in Mims v. Reid, Fla. 1957, 98 So.2d 498."
It can be inferred that the court's reasoning was that the petitioners were estopped because they failed to raise the defense against the splitting of the cause of action timely, and such defense was not the affirmative defense of res judicata and thus should not be treated in the same manner as such a plea would be treated.
We are of the view that such reasoning is faulty and the decision is in direct conflict with the decision of this Court in Hough v. Menses, Fla. 1957, 95 So.2d 410.
We note first that under similar circumstances no waiver was adjudged to have occurred in Mims. However, the record in Mims, on file with this Court, reveals that the plaintiff did not contend that the defendant there had waived his right to enforcement of the rule.
In Restatement, Judgments, Sec. 62, p. 257 it is said that one consents to the splitting of a cause of action where "in none of the actions does the defendant make the objection that another action is pending based upon the same claim."
The petitioners here did object to the splitting in their answer to the amended complaint in the second suit, the one for personal injury damages. However, the district court of appeal was of the view that this objection was not made at "the first opportunity." It indicated the defense was *436 not one such as the affirmative defense of res judicata, which must be raised in a defendant's answer to the complaint filed against him.
In Mims this Court cited with approval 1 Fla.Jur., Actions, Section 42, wherein it is stated that the rule against splitting causes of action is "closely related to the doctrine of res judicata" and the remedy is a defense in the nature of a plea in abatement.
Until the abolishment of such pleas, the objection to the splitting of a single cause of action could have been made as a plea in the nature of a plea in abatement. Glasser v. Hackett, 1896, 37 Fla. 358, 20 So. 532.
But pleas in abatement have been abolished and the proper way to plead matters in abatement is by answer or motion. 1 Fla.Jur., Abatement & Revival, Section 4; Rules 1.7(e) and 1.11(b), Florida Rules of Civil Procedure, 30 F.S.A.
However, in the instant case a plea in abatement would not have been the proper plea to be asserted by the defendants, for by the time plaintiff's amended complaint was filed in the instant suit the first suit had been dismissed with prejudice. The proper plea was one to bar absolutely the second action, not merely to delay it pending disposition of another suit. In other words, the proper defense was one in the nature of res judicata. The district court of appeal's reasoning, noted previously, is thus faulty.
Rule 1.11(b), Fla.R.Civ.P., lists those matters which may be raised by motion, requiring all other defenses to be raised by answer.
Rule 1.8(d), Fla.R.Civ.P., requires that all affirmative defenses be raised by answer. Res judicata and "any other matter constituting an avoidance or affirmative defense" are included within that rule. The subject defense of splitting a cause of action clearly comes within that category and should have been raised in the answer, just as any other affirmative defense must be raised, as we so held in Hough v. Menses, 95 So.2d 410, supra.
The effect of the decision of the district court of appeal must be said to be that the defendant should have raised the affirmative defense against the splitting of the cause of action prior to filing their answer, i.e., by motion. This is contra to and in conflict with the holding of this Court in Hough, supra.
The petition for writ of certiorari having heretofore been issued, the decision of the district court of appeal is hereby quashed for the reasons expressed above and the cause is remanded for further proceedings consistent herewith.
TERRELL, DREW and THORNAL, JJ., concur.
ROBERTS, C.J., dissents (agrees to jurisdiction but disagrees on merits).
THOMAS and HOBSON, JJ., dissent.

ON REHEARING GRANTED
HOBSON, Justice (Retired).
It is not deemed necessary to enucleate the facts of this case. They are fully set forth in the Court's opinion prepared by Mr. Justice O'Connell which was filed December 6th, 1961. Nor is there any reason to discuss the question of this Court's jurisdiction. We have previously concluded that issue. We will go directly to the merits.
It is contended that the decision of the District Court of Appeal herein is in direct conflict with the decision of this Court in the case of Mims v. Reid, Fla., 1957, 98 So.2d 498.
Upon a careful study of our decision in Mims v. Reid, supra, it is obvious that the rule "only one cause of action arises as a *437 result of a single wrongful act" was applied to render justice in an entirely different set of circumstances than those in the cause under consideration. We find no direct conflict with the Mims case by the decision of the District Court of Appeal herein; however, we hereby recede from any statement therein which might be considered to be in conflict with our decision in the instant suit. In Mims the question was, "May a person who suffers property damages and personal injury in an automobile collision and accepts reimbursement from an insurance carrier for the property damages giving to the insurance carrier a loan receipt sue the adverse party for personal injury, securing judgment and payment thereof and thereafter maintain a separate suit for the use and benefit of the insurance carrier to recover the property damage?"[1] (Emphasis supplied.) This Court answered the query in the negative and we still consider this to be a correct determination.
In Mims, plaintiff had signed a loan receipt on August 31, 1954, in which he received six-hundred dollars from the Emmco Insurance Company for automobile damages and agreed therein "to promptly present claim and, if necessary, to commence, enter into and prosecute to conclusion suit against such persons * * * through whose negligence * * * the loss was caused * * * with all due diligence, in his, its or their own names." (Emphasis supplied.) Thereafter, in separate complaints plaintiff asked for property damages and personal injury damages. Yet after a pre-trial conference before the court a pre-trial order was entered ordering and adjudging "That the allegations contained in the complaint filed herein concerning automobile damages be and the same is [sic.] hereby striken [sic.] upon agreement of counsel for both parties," and thereafter on June 30, 1955, a judgment was entered and satisfied as damages. Later, on February 20, 1956, an order was entered, after motion for summary judgment, in the cause instituted to collect property damages, finding that the case was between the same parties, based on the same collision and entered judgment for the defendant. See Vasu v. Kohlers, Inc., 145 Ohio St. 321, 61 N.E.2d 707, 166 A.L.R. 855, and Rush v. City of Maple Heights, 167 Ohio St. 221, 147 N.E.2d 599, where successive suits were brought by the same party.
In the instant case the facts are different. The District Court in its opinion states that the Mid-State Insurance Company in June, 1957, paid Scott $800.00 and received from Scott an assignment and subrogation agreement [see District Court's opinion 118 So.2d 555] as to Scott's claim against Rosenthal for property damage. It is elementary that a loan receipt and a subrogation agreement are two different legal instruments.[2] Only in the latter is the subrogee the real party in interest who is entitled to bring suit in its own name. The insurance company, in February, 1958, in its own name brought suit against Rosenthal in the Civil Court of Record (jurisdiction $5,000.00) which was settled by stipulation between counsel for Mid-State Insurance Company and Rosenthal, but settlement was not reached until the action in Scott v. Rosenthal was commenced and service on Rosenthal was perfected.
In Mims, the two actions had been commenced, had been ordered consolidated, and counsel for the parties had stipulated that claim for property damage should be deleted. The defendant tort-feasor had a right to rely on the good faith of plaintiff when they agreed as a compromise settlement *438 to first delete property damage and then to settle for "$2,000.00 as damages for the injuries." It would have been unconscionable for the court to allow plaintiff to later come in seeking the very damages he had stipulated to delete, as a result gain a compromise settlement, and then recover property damages against defendant for the insurance company which plaintiff neglected to protect as he had promised in his signed loan receipt.[3]
No such facts appear in this case. The plaintiffs were not the same, the attorneys were not, and the action for personal injuries could not have been considered in the Civil Court of Record where the property damages were settled because of the amount of the claim for personal injuries. Here there was no involved pre-trial conference between the same parties, no consolidation of separate actions, no loan receipt, and the claim for personal injuries had not been presented at the time of the institution of the first suit.
Understandably, the insurance company's attorney was interested only in securing for his employer the amount of damages it had sustained. There is nothing in the court's opinion in Mims to indicate that the court considered whether an exception to the single cause principle should be drawn in cases involving insurance. That case turned on the points of the same parties and the dismissal upon stipulation of the claim for property damage at the pre-trial conference.
We again recognize the majority rule against splitting a single cause of action, but we do not believe that said rule is controlling under the facts of this case. The application of said rule herein without recognizing the insurance exception would in our judgment defeat the ends of justice. Cf. Atlantic Coast Line R. Co. v. Campbell, 104 Fla. 274, 139 So. 886  syllabus by the Court #1. Oft'times when an automobile accident results in property damage and personal injuries the ultimate extent of the personal injuries, as opposed to the amount of the property damages, may not be readily ascertainable. So long as the magnitude of the injuries to the person are known before the expiration of the statutory period within which a tort action may be begun the person whose property was damaged and who suffered personal injuries should be permitted to maintain a suit against the wrong-doer regardless of the fact that he may have, under the exigencies[4] of the situation, settled with an insurance carrier the matter of property damages.
It is entirely probable that even a lawyer, much less a layman, when hospitalized or bed-ridden at home, would adjust his property damages claim without suspecting by so doing that he was waiving all rights to an action for the injuries to his person.
To hold that under such circumstances the innocent party had split his cause of action and waived his right to sue for personal injuries is unthinkable. If a so-called subrogated insurer must wait for perhaps several years to recover the money which it has advanced for the property damage or by filing its claim can force the injured person to bring a personal injury action prematurely, before the total extent of his injuries are known, then, and in that event, there is something wrong with the law. We can not be persuaded that we should create a truism out of the hackneyed saw: "It's all law and no justice."
*439 We adhere, as aforestated, to the one cause of action principle; however, considering the over-all effect of requiring either the insurance companies, whose business reputation largely depends upon their ability to quickly pay their claims, to wait until it is feasible for an injured person to go to trial, or to require an injured person to bring a suit before time tells the extent of his injuries is impracticable and would work undue hardship on the aggrieved parties not commensurate with the justice and reason for the rule against splitting a cause of action. Many other jurisdictions favor the single cause of action rule but draw an exception in cases where one element (usually property loss) is a subject of insurance because of prejudice to the interests of either the insured or the insurer. 62 A.L.R. 989. In Underwriters at Lloyd's Ins. Co. v. Vicksburg Traction Co., supra, the plaintiff insured an automobile against injury under a policy providing for subrogation. It was struck by defendant's street car, and not only was the automobile damaged, but the owner suffered personal injuries. Plaintiff discharged its liability under the policy and received an assignment of the owner's rights for damage to the car. Thereafter the owner recovered against the defendant for his personal injuries. It was held, that the recovery of that judgment was not an adjudication precluding a subsequent recovery by plaintiff under its assignment, for, owing to the provisions of the policy providing for subrogation, two causes of action arose upon the accident, and there was no splitting of causes which would render a recovery on one a bar to the other. We quote from the opinion in Underwood v. Dooley, 147 S.E. 686:
"It cannot be held as law in this state that the owner of an automobile, who, as the result of the wrong or tort of another, has sustained damages both to his automobile and to his person, and whose automobile is insured against the loss or damage which he has sustained because of injuries to his automobile, is put to an election whether or not he shall, in order to maintain an action against the wrongdoer to recover damages for injuries to [his] person, release the insurance company from all liability to him under its policy. He does not lose his right of action to recover for the injuries to his person, by accepting from the insurance company the amount for which it is liable to him, under its policy, because the insurance company thereafter, upon the cause of action which has accrued to it, recovers of the wrongdoer the amount which it has paid the owner of the automobile in discharge of its liability under the policy. This is not unjust to the wrongdoer, who is thereby required to pay only the full amount for which he is liable because of his wrong or tort."
A New York case, Teper v. Rackman, 264 App.Div. 981, 37 N.Y.S.2d 203, involved a situation in which the insurance company first brought action for its damages and later the insured brought action against the tort-feasor for personal injuries and the court held, "The plaintiff in this action was not a party to the prior action. He had no opportunity to litigate in that action the questions involved in the present action. The judgment * * * does not bar the maintenance of this suit."
The underlying reason for the rule against splitting a cause of action is salutary. The rule has as its purpose, as every student of the law knows, "that litigation should have an end and that no person should be unnecessarily harrassed with a multiplicity of suits." However, a rule such as the one under consideration should not be declared rigid, inflexible and inexorable when such declaration would in many, many instances, for the sake only of convenience to a putative wrongdoer, defeat the ends of justice.
Were we to adhere to said rule and declare it to be unyielding in this case, or in *440 any other case with a similar factual setting, we would, in our judgment, be guilty of making a mockery of the fundamental purpose of all courts in this country  administration of simple, "even-handed" justice.
Every court in this land in spirit if not in fact has emblazoned over its portal in box-car letters: "Fiat Justicia." We pray it may ever remain so.
The decision of the District Court herein and hereby challenged is affirmed.
It is so ordered
ROBERTS, C.J., and TERRELL, THOMAS, DREW, THORNAL and O'CONNELL, JJ., concur.
NOTES
[1] This query was the real question in Mims regardless of a subsequent indication that the loan receipt was a subrogation agreement.
[2] Gould v. Weibel, Fla., 62 So.2d 47; Underwood v. Dooley, 197 N.C. 100, 147 S.E. 686, 64 A.L.R. 656, and Underwriters at Lloyds Ins. Co. v. Vicksburg Traction Company, 106 Miss. 244, 63 So. 455, 51 L.R.A.,N.S., 319.
[3] We are compelled at this point to digress and state that plaintiff's conduct in this regard, to say the least, was anything but commendable.
[4] There might be but one family car. The spouse, or some relative or friend, might need transportation for visiting or administering aid to the injured person, traveling to the grocery or other stores to purchase necessities for the dependents of the incapacitated individual or for going to and from work or for some other regular, or emergent, use of the family vehicle.