481 So.2d 517 (1985)
EAGLE-PICHER INDUSTRIES, INC., Appellant,
v.
Milton T. COX, Sr., Appellee.
No. 84-42.
District Court of Appeal of Florida, Third District.
December 31, 1985.
Rehearing Denied February 4, 1986.
*519 Kimbrell, Hamann, Jennings, Womack, Carlson & Kniskern and Michael K. McLemore, Miami, for appellant.
Baron & Associates and Jane N. Saginaw, Dallas, Tex., Louis S. Robles, for appellee.
Maguire, Voorhis & Wells and Kimberly A. Ashby, Orlando, for Florida Defense Lawyer's Ass'n as amicus curiae.
Before BARKDULL, BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
In this appeal from a substantial money judgment entered against it, Eagle-Picher Industries, Inc., a manufacturer of asbestos products, contends that the trial court erred in several respects. One of these claimed errors, relating to the admission of certain evidence, earns an extended discussion, but none of them earns a reversal of the judgment under review.[1]
Eagle-Picher contends that the trial court improperly admitted, over its objection, evidence that the plaintiff, having contracted asbestosis, but not cancer, had an enhanced risk of contracting cancer in the future.[2] The plaintiff responds that such evidence is admissible where, as here, there is predicate testimony that there was a greater than fifty-percent chance that the future damage would occur[3]; and, alternatively, such evidence is admissible to prove that the plaintiff suffered great mental distress and anxiety arising from his fear of developing cancer.[4]

I.
The generally accepted rationale for permitting recovery for future damages is that "the injured party may ordinarily bring but one action for the recovery of all damages resulting from a single incident irrespective of whether such damages may *520 be present or prospective [and if the plaintiff] fails to pursue recovery for future damages he will ordinarily be unable to institute another action when the damages actually accrue." Annot., Medical Testimony  Future Consequences, 75 A.L.R.2d 9 (1977). The prohibition against a second action when the formerly future damages become manifest stems from the well-settled rule against "splitting" causes of action. This rule is "an aspect of the doctrine of res judicata" which "makes it incumbent upon [plaintiffs] to raise all available claims" in one action and which "precludes subjecting ... defendants to another successive action based on this same conduct." Greenstein v. Greenbrook, Ltd., 443 So.2d 296 (Fla.3d DCA 1983) (purchaser's failure to raise breach of contract claim in first action precluded second action for breach of contract and tortious interference with contractual relationship based on same contract). The rule "is founded on the sound policy reason that the finality established by the rule promotes greater stability in the law, avoids vexatious and multiple lawsuits arising out of a single tort incident, and is consistent with the absolute necessity of bringing litigation to an end." McKibben v. Zamora, 358 So.2d 866, 868 (Fla.3d DCA 1978) (citing Mims v. Reid, 98 So.2d 498 (Fla. 1957)). See also 1 Fla.Jur.2d Actions § 56 (1977).
If, then, the rule against splitting operates to bar a second action for later-manifested injury, recovery of damages for such injury must be available in the first action, since "[t]he fundamental principle of the law of damages is that the person injured" shall be compensated "commensurate with the loss sustained." Hanna v. Martin, 49 So.2d 585, 587 (Fla. 1950). On the other hand, if the rule would not bar a second action for the later-manifested injury, the very rationale for permitting future damage awards in the first action  that is, that the rule against splitting precludes the second action  vanishes. Thus, in this case, the resolution of whether recovery of damages for the enhanced risk of cancer is appropriate is inextricably tied to a determination of whether the plaintiff will be barred from bringing a later action if and when he actually contracts cancer. Accord Gideon v. Johns-Manville Sales Corp., 761 F.2d 1129, 1136-37 (5th Cir.1985) (because Texas law permits "but one cause of action for all the damages caused by defendants' legal wrong," plaintiff must join claim for risk of future pulmonary disease in present lawsuit seeking damages for asbestosis). In deciding, as we do, that the plaintiff cannot recover damages in the present case for his enhanced risk of contracting cancer in the future (and thus that evidence introduced for that purpose is inadmissible), we also decide an issue not squarely before us, that is, that the plaintiff may bring a second action for damages if and when he actually contracts cancer. There is ample authority for the proposition that a court deciding an issue in a first action may decide that a plaintiff's right to maintain a later action is reserved. Restatement (Second) of Judgments § 26(1)(b) and (f).[5]See also Wilson v. Johns-Manville Sales Corp., 684 F.2d 111, 117 n. 34 (D.C. Cir.1982). Such a decision is particularly appropriate when, as here, the reservation of the right to sue for cancer damages when they become choate is inextricably tied to  indeed, the justification for  the preclusion of the right to sue for inchoate cancer damages. See Devlin v. Johns-Manville Sales Corp., 202 N.J. Super. 556, 495 A.2d 495 (Law Div. 1985).[6]
*521 We have come to our decision that any recovery for cancer damages must await the actuality of cancer by balancing the need for finality against countervailing factors which militate in favor of the splitting of the actions. This balancing process recognizes that the desirable goal of finality is not an absolute and that the procedural rule against splitting causes of action must be relaxed when equitable considerations demand it. For example, in Rosenthal v. Scott, 150 So.2d 433 (Fla. 1961), rev'd on rehearing, 150 So.2d 436 (Fla. 1963), the court held that the plaintiff could sue to recover for personal injuries sustained in a car accident subsequent to a suit brought and settled by his insurance company, as subrogee, for property damage incurred in the same accident. The court "recognize[d] the majority rule against splitting," but concluded that applying the rule in such a case would "defeat the ends of justice." 150 So.2d at 438. It reasoned that the scope of property damage is often more quickly ascertainable than the scope of personal injuries, and it would be inequitable to force the subrogated insurer to wait perhaps several years to recover money it has advanced for property damages or to force an injured party to bring a personal injury action before the extent of his injuries is known. See also Edelman v. Kolker, 194 So.2d 683 (Fla.3d DCA 1967) (insurer's property damage suit brought subsequent to plaintiff's successful personal injury suit did not violate rule against splitting); Emmco Ins. Co. v. Bankston, 163 So.2d 24, 26 (Fla.3d DCA 1964) (where insured had sued defendant for personal injuries arising from car accident, rule against splitting did not prevent insurer as subrogee from suing defendant, since such a suit "is not unjust to the wrongdoer, who is thereby required to pay only full amount for which he is liable because of his wrong or tort"). Again, in McKibben v. Zamora, 358 So.2d 866, despite holding that the rule against splitting prevented the plaintiff from bringing an action for personal and permanent injuries after having obtained a judgment for property damage in an earlier action arising out of the same car accident, this court recognized that a determination of whether a plaintiff has improperly split an action "requires a balancing of interests." Id. at 869. In McKibben, the court reasoned that the compelling need to put an end to litigation in "an already burdened judicial system," id., outweighed in the particular case the plaintiff's need to sue for property damage and later, having reached the no-fault threshold of $1,000 in personal injury damages or suffered permanent injury as required by Section 627.737(2), Florida Statutes (1975), to sue for these latter damages. But, as will be seen, to permit a separate action for cancer arising from exposure to asbestos will ultimately prevent rather than promote vexatious litigation and a multiplicity of lawsuits, and thus advance the goals of the rule against splitting.

II.
The objectives of the rule against splitting causes of action  finality and judicial economy  are, ironically, at odds in the present case. Admittedly, to permit a separate action for cancer if and when it occurs does not promote finality. But to permit an action for cancer only if and when it occurs most assuredly promotes judicial economy by discouraging the filing of anticipatory lawsuits and the concomitant protraction of pending lawsuits so as to allow the still inchoate cancer claim to ripen. Moreover, the alternative of sanctioning a damage award in the single action for the risk of cancer encourages the use of speculative testimony and leads, necessarily, to inequitable results.

*522 A.
Only by understanding the relationship between the diseases resulting from exposure to asbestos can one understand that permitting recovery for the risk of cancer can generate more lawsuits, and protract existing ones. The parties agree that asbestosis and cancer are distinct and separate diseases which emanate from the same cause  exposure to asbestos. See Wilson v. Johns-Manville Sales Corp., 684 F.2d 111, 117 n. 33 (D.C. Cir.1982). It is widely accepted by the scientific community that asbestosis and cancer are not medically linked, that is, cancer is not an outgrowth or complication of asbestosis.[7]Id. Nonetheless, it has been estimated that fifteen percent of those persons who contract asbestosis later develop pleural mesothelioma (lung cancer), one of the two types of cancer commonly caused by exposure to asbestos. See Pierce v. Johns-Manville Sales Corp., 296 Md. 656, 659 n. 2, 464 A.2d 1020, 1022 n. 2 (1983) (citing Selikoff, Churg, and Hammond, Relation Between Exposure to Asbestos and Mesothelioma, 272 New Eng. J.Med. 560, 662 (1965)). But because asbestosis, unlike cancer, may be mild, non-life-threatening, and relatively inexpensive to treat, many asbestosis victims would not sue were not recovery allowed for the risk of cancer. Thus does allowing recovery for risk of cancer combined with the rule against splitting  by requiring asbestosis victims to then bring risk of cancer claims  operate to encourage needless litigation. See Wilson v. Johns-Manville Sales Corp., 684 F.2d 111 (plaintiff who contracted but did not sue on account of mild asbestosis not barred by rule against splitting from suit for later-acquired cancer); Fearson v. Johns-Manville Sales Corp., 525 F. Supp. 671, 674 (D.D.C. 1981) (rejecting defendant's argument that the statute of limitations for bronchogenic carcinoma (lung cancer) action began to run when the plaintiff was earlier diagnosed as having asbestosis, since under that theory, "plaintiffs would be forced to come into Court as soon as any minimal problem is diagnosed and seek speculative damages as to any other injuries that might develop in the future. Plain common sense teaches that the law was never meant to be so unreasonable"). See also Pierce v. Johns-Manville Sales Corp., 296 Md. 656, 464 A.2d 1020 (cancer action accrued when plaintiff who did not sue for asbestosis was diagnosed with cancer, since to hold otherwise would encourage the filing of anticipatory lawsuits); Gore v. Daniel O'Connell's Sons, Inc., 17 Mass. App. 645, 648, 461 N.E.2d 256, 259 (1984) (rejecting argument that statute of limitations should begin to run before latent disease is discovered and noting that "[n]ot only does it offend fairness to require of claimants the gift of prophecy, [citations omitted], but it is unsound judicial policy to encourage the initiation of lawsuits in anticipation that a grave disease will manifest itself pendente lite"). As the court recognized in Wilson v. Johns-Manville Sales Corp., 684 F.2d 111, to allow recovery for the risk of cancer (or to deny recovery for cancer when it actually occurs because of the rule against splitting)[8] promotes anticipatory and unnecessary lawsuits:

*523 "Concern for judicial economy also influences our decision. Upon diagnosis of an initial illness, such as asbestosis, the injured party may not need or desire judicial relief. Other sources, such as workers' compensation or private insurance, may provide adequate recompense for the initial ailment. If no further disease ensues, the injured party would have no cause to litigate. However, if such a person is told that another, more serious disease may manifest itself later on, and that a remedy in court will be barred unless an anticipatory action is filed currently, there will be a powerful incentive to go to court, for the consequence of a wait-and-see approach to the commencement of litigation may be too severe to risk. Moreover, a plaintiff's representative in such a case may be motivated to protract and delay once in court so that the full story of his client's condition will be known before the case is set for trial."
684 F.2d at 120.
The rule against splitting was designed to function in precisely the opposite manner and to rigidly apply it here would do "violence to the essence and purpose of the general rule." Martinez-Ferrer v. Richardson-Merrell, Inc., 105 Cal. App.3d 316, 326, 164 Cal. Rptr. 591, 596 (1980) (finding separate causes of action for limitations purposes created by independent non-simultaneous injuries of dermatitis and cataracts even though both resulted from same drug).

B.
Allowing recovery of risk of cancer damages not only encourages anticipatory lawsuits but runs counter to the desirable goal that cases be decided on the best quality evidence available and that jury verdicts speak the truth. Courts which have held that the statute of limitations for asbestoscaused cancer begins to run when the cancer was or should have been discovered, rather than when the medically unrelated asbestosis was or should have been discovered, have recognized that evidence in latent disease cases tends to improve over the course of time. As the court in Wilson explained:
"[I]n situations involving the risk of manifestation of a latent disease, unlike the mine run of litigation, the evidentiary consideration counsels narrower delineation of the dimensions of a claim. Key issues to be litigated in a latent disease case are the existence of the disease, its proximate cause, and the resultant damage. Evidence relating to these issues tends to develop, rather than disappear, as time passes."
684 F.2d at 119.
See also Colby v. E.R. Squibb & Sons, Inc., 589 F. Supp. 714, 717 (D.C.Kan. 1984) (DES case holding that the statute of limitations in adenocarcinoma action did not begin to run until plaintiff should reasonably have discovered condition, and noting that "`evidentiary' function of a statute of limitations  protecting defendants from time-flawed evidence, fading memories, lost documents, etc.  is of small importance in a latent disease case"). The effect of requiring the premature claim for risk of cancer damages is to deny the fact-finder the most accurate evidence about the cancer  when it in fact developed and the extent of the disease  and to encourage highly speculative testimony. Thus, to disallow risk of cancer damages and limit recovery to damages for actual cancer when it develops, even though, because of the latent nature of the disease, the cancer action is brought decades after the exposure to asbestos, is ironically consistent with the purpose of statutes of limitations, that is, to avoid the speculative testimony of witnesses.[9] *524 See generally Nardone v. Reynolds, 333 So.2d 25, 36 (Fla. 1976) (purpose of statute of limitations is, inter alia, to shield defendants from being left to defend old claims with nothing more than "tattered or faded memories, misplaced or discarded records, and missing or deceased witnesses").

C.
The speculative nature of the prediction of future damages[10]  that a person with asbestosis will someday contract cancer  may lead to several inequitable results. First, the plaintiff who does not contract cancer gets a windfall  cancer damages without cancer. See Wilson v. Johns-Manville Sales Corp., 684 F.2d at 120 n. 45 (persons who contract asbestosis but not mesothelioma "will receive a windfall, and, in the aggregate, the defendant will over-compensate the injured class"). Second, and perhaps worse, an asbestosis plaintiff who is unsuccessful in his efforts to recover risk of cancer damages, but later contracts cancer, has the disease but no damages. Third, even plaintiffs who later contract cancer and who have recovered some amount of risk of cancer damages may emerge with an inequitable award, since the jury, cognizant of the less than one hundred percent chance that the plaintiff will contract cancer, likely will have awarded less than one hundred percent damages.[11] Finally, inequitable awards are more likely to result from a future damages action simply because the damages cannot be known. If the disease has advanced  or even come into existence  the actual financial needs of the plaintiff can obviously be more accurately assessed. See Wilson v. Johns-Manville Sales Corp., 684 F.2d at 119.

III.
What has been said thus far in support of the proposition that risk of cancer damages should not be recoverable might well be said about any late developing disease or injury. But surely it has always been the case that a plaintiff who sues for personal injuries incurred in an automobile accident must recover then, if he is to recover at all, for any future physical consequences of the accident. Yet to force him to do so may promote the same anticipatory and unnecessary litigation, invite *525 the same speculative evidence and jury verdicts, and produce the same inequitable results.
Whether the need for finality  and the rule against splitting  should give way in other situations to a rule precluding the recovery of speculative future damages but allowing a separate and later action when such damages become an actuality, we need not here decide. The dimensions of asbestos litigation are so vast, and the potential for inequity so great, that the need for finality  and the rule against splitting  pales in importance. We quote some excerpts from the Appendix to the Fifth Circuit's recent opinion in Jackson v. Johns-Manville Sales Corp., 750 F.2d 1314, 1335 (5th Cir.1985) (en banc):
"No other category of tort litigation has ever approached, either qualitatively or quantitatively, the magnitude of the claims premised on asbestos exposure."
... .
"Between the early 1970's and 1982 the asbestos companies and their insurers expended over $1 billion in litigation expenses, damage awards and settlements. This figure does not include the costs incurred by state or federal governments, expenses and compensation in workers' compensation claims, or the costs resulting from the Chapter 11 proceedings initiated by Johns-Manville, Unarco, and Amatex."
... .
"In August of 1982, approximately 21,000 claimants had filed product liability suits alleging asbestos-related injuries. Seven months later by March of 1983, the figure had risen to about 24,000 claimants. Currently, new suits are being docketed at an average rate of 500 per month."
... .
"The long latency periods for asbestos-related disease, usually ranging between 15 and 40 years, make it difficult to ever determine if all possible claimants exposed within a given time period have been identified."
... .
"The problem is further complicated by the emergence of new and frequently unanticipated classes of plaintiffs. To date most cases have been filed by shipyard workers, asbestos product factory workers, and insulation workers. Now new groups of plaintiffs from different points along the line of distribution of asbestos are emerging. Potential claimants include warehouse workers, truck drivers, longshoremen, and spouses of workers exposed when the worker returned home covered with asbestos dust."
... .
"[A] 1981 study for the Department of Labor estimated that more than 21 million living American workers have been significantly exposed to asbestos during the past 40 years."
... .
"The Epidemiology Research Institute has estimated that Johns-Manville faces between 30,000 and 120,000 suits, with 45,000 set as the most probable number. Paul MacAvoy has estimated that there will be 200,000 new suits, while Conning and Company has placed between 83,000 and 178,000 by the year 2010."
... .
"The Asbestos Litigation Reporter determined that of the 147 asbestos cases tried a total of $39,468,002 in punitive damages had been awarded to 21 plaintiffs."
750 F.2d at 1335-38 (footnotes omitted; citations omitted).
Given the immensity of the demands made and yet to be made upon asbestos litigation defendants, the finite resources available to pay claimants in mass tort litigation, and the real danger that over-compensation of early claimants who may not contract cancer will deplete these finite resources to the detriment of future claimants who do, public policy requires that the resources available for those persons who do contract cancer not be awarded to those whose exposure to asbestos has merely increased their risk of contracting cancer in the future. Eliminating the future *526 risk of cancer as a compensable damage, and permitting an action for later discovered cancer to be independent of any claim for damages, prosecuted or not, on account of asbestosis, will, it is to be hoped, prevent a drain on the assets which could be used to compensate actual cancer victims. Thus, because we hold that damages are not recoverable for the future risk of cancer, the evidence was not admissible to prove such future risk.[12]

IV.
We now turn to the question of whether the evidence that the plaintiff had an enhanced risk of contracting cancer in the future was admissible to prove that the plaintiff presently suffered mental distress and anxiety arising from his fear of developing cancer.[13]
In Florida, the prerequisites for recovery for negligent infliction of emotional distress differ depending on whether the plaintiff has or has not suffered a physical impact from an external force. If the plaintiff has suffered an impact, Florida courts permit recovery for emotional distress stemming from the incident during which the impact occurred, and not merely the impact itself. See Gilliam v. Stewart, 291 So.2d 593 (Fla. 1974). If, however, the plaintiff has not suffered an impact, the complained-of mental distress must be "manifested by physical injury," the plaintiff must be "involved" in the incident by seeing, hearing, or arriving on the scene as the traumatizing event occurs, and the plaintiff must suffer the complained-of mental distress and accompanying physical impairment "within a short time" of the incident. Champion v. Gray, 478 So.2d 17, 19 (Fla. 1985), aff'd on rehearing, (opinion filed October 31, 1985). Because the plaintiff in the present case did not allege or prove physical manifestations of emotional distress, we must determine a question of first impression: whether inhalation of asbestos constitutes an impact so as to allow recovery.
While several courts have declared ipse dixit that the ingestion of harmful chemicals and drugs does not constitute an impact, see, e.g., Plummer v. Abbott Labs, 568 F. Supp. 920, 927 (D.R.I. 1983) (denying recovery to mothers who ingested DES during pregnancy on ground that both impact and physical manifestation of emotional harm absent, and thus assuming, without explanation, that ingestion of drug was not impact); Pazo v. The Upjohn Co., 310 So.2d 30 (Fla.2d DCA 1975) (holding, without discussion, that parents of child born with deformities resulting from mother's ingestion of defendant's drug during pregnancy suffered no impact and therefore not entitled to recover for their mental distress), common sense and medical reality compel the conclusion that the inhalation of asbestos fibers satisfies the impact rule. See Wetherill v. University of Chicago, 565 F. Supp. 1553, 1560 (N.D.Ill. 1983) (holding actionable a complaint seeking to recover for mental distress caused by "cancerphobia," where plaintiff's arguably reasonable fears stemmed from her prenatal exposure to DES, "the `physical impact' of defendants' allegedly-tortious conduct"). See also Morton v. Stack, 122 Ohio St. 115, 170 N.E. 869 (1930), cited in W. Prosser and W. Keeton, The Law of Torts § 55 at 369 (5th Ed. 1984) (Prosser) (inhalation of *527 smoke constitutes an impact). Indeed, asbestosis, caused by inhalation of asbestos fibers, Larson v. Johns-Manville Sales Corp., 140 Mich. App. 254, 257, 365 N.W.2d 194, 195 (1985), "begins when asbestos fibers become embedded in the lungs," Todd Shipyards Corp. v. Black, 717 F.2d 1280, 1289-90 (9th Cir.1983), cert. denied, 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984). Surely, the embedding of asbestos fibers in the lungs is no less an impact than the microscopic intrusion of tubercule bacilli into the body found to have satisfied the impact rule in Plummer v. United States, 580 F.2d 72 (3d Cir.1978); accord Sypert v. United States, 559 F. Supp. 546 (D.C. Cir.1983) (distinguishing Plummer on the ground that while the entrance of bacilli is an impact, it is not, as Virginia law requires, an injury for purposes of recovering mental distress damages), or the invisible electric shock held sufficient to support a mental distress claim in Clark v. Choctawatchee Electric Cooperative, 107 So.2d 609 (Fla. 1958). The essence of impact, then, it seems, is that the outside force or substance, no matter how large or small, visible or invisible, and no matter that the effects are not immediately deleterious, touch or enter into the plaintiff's body.[14]
Having determined that inhalation of asbestos satisfies the impact rule, and that, therefore, the plaintiff need not physically manifest his alleged emotional distress, we must still determine if and when recovery is available for fear of cancer. "Fear of" claims have long been permitted. See Alley v. Charlotte Pipe and Foundry Co., 159 N.C. 327, 74 S.E. 885 (1912) (plaintiff allowed to recover for mental suffering since wound from burn "liable" to lead to "early cancer" or "sarcoma"). The justification for permitting recovery for "fear of" is that the plaintiff suffers, since "[l]ike the sword of Damocles [plaintiff] knows not when it will fall." Id. at 331, 74 S.E. at 886. But, if Damocles supplies the reason for permitting recovery, Pandora supplies the reason for at least limiting recovery.
Dean Prosser, an early advocate of permitting mental distress claims, cautioned that:
"If recovery is to be permitted, however, it is also clear that there must be some limitation. It would be an entirely unreasonable burden on all human activity if the defendant who has endangered one person were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as all his friends. And probably the danger of fictitious claims, and the necessity of some guarantee of genuineness, are even greater than before. It is no doubt such considerations that have made the law extremely cautious in extending its protection to the bystander."
Prosser § 55 at 366.
Cognizant of these concerns, several courts have required that "fear of" claims be available only to those who have suffered a physical injury. For example, in Devlin v. Johns-Manville Sales Corp., 202 N.J. Super. 556, 495 A.2d 495, a case much like the case before us, the court held that the plaintiff, who already suffered from asbestosis, could recover for the mental distress he suffered as a result of his "fear of" contracting cancer, since the case involved an "immediate and direct physical impact and injury." Id. at 563, 495 A.2d at 499. In so holding, the court distinguished Ayers v. Jackson Twp., 189 N.J. Super. 561, 461 A.2d 184 (Law Div. 1983), vacated on other grounds, 202 N.J. Super. 106, 493 A.2d 1314 (A.D. 1985) (vacating mental distress *528 award on ground that while such damages might be recoverable against a non-governmental entity, New Jersey Tort Claims Act does not provide for their recovery against governmental entity), which held that New Jersey residents suing for cancerphobia[15] stemming from their ingestion of toxic waste that had leaked from a land fill into their drinking water, could not recover unless the plaintiffs presented evidence "to support a finding that emotional injury as evidenced by substantial bodily injury or sickness has resulted from knowledge that defendants have ingested contaminants ... [since] ... [o]therwise the task of evaluating and quantifying each person's apprehension in every ground water pollution case, each of which might involve hundreds, if not thousands of residents, would become prodigious." 189 N.J. Super. at 571, 461 A.2d at 189 (emphasis supplied).[16],[17]See also Mink v. University of Chicago, 460 F. Supp. 713, 716 n. 2 (N.D. Ill. 1978) (recovery for fear of disease under count alleging negligence available only to plaintiffs with physical symptoms).
The physical injury requirement is consistent with Florida law, necessary and fair. Millions of people have been exposed to asbestos.[18] Permitting an action for fear of cancer where there has been no physical injury from the asbestos would likely devastate the court system as well as the defendant manufacturers.[19] Imposing a requirement that there be a physical injury as a predicate to recovery for mental distress arising from a fear of cancer is not an arbitrary act. First, although asbestosis and cancer are not medically linked in that asbestosis does not cause cancer, see Pierce v. Johns-Manville Sales Corp., 296 Md. 656, 660 n. 4, 464 A.2d 1020, 1023 n. 4, the fact that a plaintiff has asbestosis may increase the chances that he will contract cancer, see id. at 658, 464 A.2d at 1022 (affidavit and study cited for proposition that asbestosis has been associated with an increased risk of cancer). As such, the physical injury requirement for a mental distress from fear of cancer claim is linked to the merits of the claim, since plaintiffs with asbestosis may have a well-founded greater reason to fear contracting cancer than those who do not have asbestosis. Other courts have permitted recovery for "fear of" claims where, as here, the feared condition is made more likely by the negligently caused condition with which the plaintiff was already suffering. For example, in Evers v. Dollinger, 95 N.J. 399, 471 A.2d 405 (1984), the court permitted the plaintiff to bring suit for fear of cancer where the plaintiff's doctor failed to properly treat and diagnose a lump in the plaintiff's breast. The plaintiff alleged that the delay in proper treatment increased her risk of cancer. The court explained:
"[p]laintiff was prepared to show that she suffered anxiety, emotional anguish *529 and mental distress. These were attributable not solely to her having the cancer but also to the growth of the tumor during the time proper treatment was withheld and from the realization, following the confirmation of her malignancy, that defendant's delay in her treatment had increased the risk that she would again fall victim, perhaps fatally, to the disease."

Id. at 406, 471 A.2d at 409 (emphasis supplied).
See also Ferrara v. Galluchio, 5 N.Y.2d 16, 21-22, 153 N.E.2d 249, 252, 176 N.Y.S.2d 996, 1000 (1958) (recovery for "cancerphobia" permitted where plaintiff suffered from a negligently caused x-ray burn which did not heal for a long period, since the physical injury provided a "guarantee of genuineness," it being common knowledge that "wounds which do not heal over long periods of time frequently become cancerous").
However, even were it not shown that plaintiff's asbestosis in fact makes cancer more likely, his present asbestosis certainly provided him with a chronic, painful and concrete reminder that he has been injuriously exposed to a substantial amount of asbestos, a reminder which may both qualitatively and quantitatively intensify his fear.[20]Cf. Devlin v. Johns-Manville Sales Corp., 202 N.J. Super. at 561, 495 A.2d at 498 (fear of cancer claim permitted and deemed not "idiosyncratic" where plaintiffs have physical manifestations of exposure to asbestos and have been told of increased risk, need for medical surveillance, and have seen friends die from exposure-related conditions). In short, the physical injury requirement will insure that the claims permitted are only the most genuine.
While this requirement might preclude some plaintiffs with actual fear from bringing suit, it seems to us justified by the fact that the judicial system could not handle the potential mere exposure "fear of" claims, and the task of discerning fraudulent "fear of" claims from meritorious ones would be "prodigious." Ayers v. Jackson Twp., 189 N.J. Super. at 570, 461 A.2d at 189.
Finally, our solution comports with the trend of Florida courts which have kept a vigilant  often inflexible, see Brown v. Cadillac Motor Car Division, 468 So.2d 903 (Fla. 1985) (denying recovery to plaintiff whose psychological trauma did not cause a demonstrable physical injury after plaintiff's defectively designed car caused plaintiff to run over and kill plaintiff's mother)  watch over the floodgates. The stringent requirement of both impact and injury for a "fear of" claim keeps the gates intact.

V.
Evidence that the plaintiff in his action to recover damages for asbestosis disease had an enhanced risk of contracting cancer in the future was not admissible to prove that risk as such, since these damages are not recoverable. The plaintiff's right to sue for cancer damages if and when he contracts that disease is reserved, and such a suit will not be subject to the rule against splitting causes of action. Evidence that the plaintiff had an enhanced risk of contracting cancer was admissible as part of the proof that the plaintiff had a present mental distress caused by his fear of getting cancer in the future in a case such as this where the plaintiff already had manifested the physical disease of asbestosis. The verdict form in which the defendant acquiesced does not indicate that the jury awarded damages to the plaintiff for his enhanced risk of contracting cancer in the future, and since the other items of damages support the amount of the verdict, the *530 defendant cannot establish that the jury considered this evidence for a purpose other than that for which it was properly admitted. Accordingly, the judgment below is
Affirmed.
BASKIN, J., concurs.
BARKDULL, Judge, dissenting.
I respectfully dissent from the majority opinion and would reverse for at least a new trial.[1] First, because the trial court failed to submit to the jury the question of whether or not the plaintiff knew, or should have known with the exercise of due diligence, of his injury, at a time which was without the statute of limitations, see the authority cited in footnote 1, and secondly, I think the trial court clearly permitted prejudicial argument to be made. In closing argument, counsel for plaintiff made prejudicial statements and improperly appealed to the passions and prejudices of the jurors. The trial judge not only failed to admonish counsel for such prejudicial remarks, he overruled objections thereto and allowed plaintiff's counsel to repeat the comments which compounded the prejudicial effect. Counsel urged the jurors to place themselves in the position of the plaintiff and consider:
"What does this man think when he goes to bed at night? What does this man think about all day when he sees his children growing up? What does this man think about when he sees his business finally taking hold, that he has worked and scrubbed all his life for? What does this man think about when he thinks about Eagle-Picher?"
He then told the jurors:
"Justice in this case is sending a message to Eagle-Picher Industries from Cincinnati, Ohio."
The trial judge overruled objections to the remarks and plaintiff's counsel repeated his prejudicial remarks saying:
"Send the message to Cincinnati, Ohio, to Eagle-Picher Industries, that people in Dade County, Florida, do not believe that this is the right way to treat other human beings."
Under the authority of Erie Insurance Company v. Bushy, 394 So.2d 228 (Fla. 5th DCA 1981) I think this was clearly reversible error and warrants a new trial.
NOTES
[1] As to Eagle-Picher's other contentions: There was simply no evidence from which the jury could have concluded that the plaintiff should have discovered that he suffered from an asbestos-related disease earlier than 1978 when the disease was diagnosed. See Copeland v. Armstrong Cork Co., 447 So.2d 922 (Fla.3d DCA 1984), quashed on other grounds, 471 So.2d 533 (Fla. 1985); Brown v. Armstrong World Industries, Inc., 441 So.2d 1098 (Fla.3d DCA 1983), pet. for rev. denied, 451 So.2d 847, 850 (Fla. 1985); Perez v. Universal Engineering Corp., 413 So.2d 75 (Fla.3d DCA 1982), remanded, 451 So.2d 463 (Fla. 1984). Thus, the question whether plaintiff's action, brought in 1980, was barred by the statute of limitations was properly decided, as a matter of law, in plaintiff's favor. Likewise, we do not read Erie Insurance Co. v. Bushy, 394 So.2d 228 (Fla. 5th DCA 1981), as establishing a per se rule of reversal when plaintiff's counsel exhorts the jury to send a message to the defendant, since in Bushy, unlike the present case, the "send a message" argument was followed by a reference to the defendants having "to pay a penalty," inescapably asking the jury to punish the defendant despite the absence of any claim for punitive damages. Moreover, the defendant makes no claim that the damages awarded in the present case were excessive. Under these circumstances, we apply the general rule that counsel will be "accorded a wide latitude in making arguments to the jury, and unless their remarks are highly prejudicial and inflammatory, counsel's statements made to the jury will not serve as a basis for reversing a judgment." Metropolitan Dade County v. Dillon, 305 So.2d 36 (Fla.3d DCA 1974), cert. denied, 317 So.2d 442 (Fla. 1975). See Honda Motor Co., Ltd. v. Marcus, 440 So.2d 373 (Fla.3d DCA 1983), pet. for rev. dismissed, 447 So.2d 886 (Fla. 1984). Finally, we find no merit to the defendant's claim that the jury was not properly instructed.
[2] Eagle-Picher is joined in this particular contention by the Florida Defense Lawyer's Association, which has filed an amicus curiae brief on this point.
[3] It should be noted that the recovery sought in this case, that is, damages for a disease which has not yet arisen, differs from damages awarded for permanent injuries, that is, present injuries which will continue indefinitely. See Corbett v. Dade County Board of Public Instruction, 372 So.2d 971, 973 n. 2 (Fla.3d DCA 1979) (future injury case noting distinction between permanent and future injury), cert. denied, 383 So.2d 1192 (Fla. 1980).
[4] The plaintiff also contends that the defendant's initial objection to the evidence was later waived by the defendant's introduction of evidence that the plaintiff was given a CAT scan, and the point is therefore not preserved for appeal. We reject this contention, since it is apparent that the CAT scan was relevant to plaintiff's asbestosis claim and did not open the door to an avalanche of "risk of" and "fear of" cancer evidence.
[5] These sections provide that the general rule against splitting is inapplicable where:

"(b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action; or
... .
"(f) It is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason... ."
[6] In Devlin, the court rejected the plaintiff's enhanced risk of cancer claim on the ground that the risk was not reasonably probable, but held that

"[i]n denying plaintiffs' damage claim at this time for enhanced risk this court concomitantly recognizes their right to sue in the future should the increased risk created by the exposure to asbestos come to fruition. As such this court's holding does not leave plaintiffs without a remedy if any one or all of them should develop cancer in the future." 202 N.J. Super. at 565, 495 A.2d at 500.
In so holding, the court noted that for purposes of the potential cancer action, the statute of limitations will not begin to run for the cancer claim until the plaintiff contracts the disease, and that the second action will not violate the "entire controversy doctrine," New Jersey's equivalent of the rule against splitting.
[7] Although asbestosis and cancer can be thus considered distinct sibling diseases parented by the same cause, simply because the diseases are distinct does not mean the causes of action are so distinct that they need not be joined in a single action. It is more than arguable that if a plaintiff, diagnosed as having both asbestosis and cancer from exposure to asbestos, sued for asbestosis damages only and then later brought a timely action for cancer damages, this second action would violate the rule against splitting, since the cancer can be said to be another injury for which damages could have been sought in the initial action wherein the defendant's liability to the plaintiff for exposing him to asbestos was being litigated. Thus, it is not because the diseases are medically distinct, but because, as a general rule, the claim for cancer damages, as distinguished from the claim for risk of cancer damages, does not become choate until much after the asbestosis claim has materialized that the rule against splitting should be relaxed.
[8] This presupposes that suit was earlier brought on the asbestosis claim, and damages for risk of cancer were either not sought or not recovered at that time. If, however, the asbestosis claim was never sued upon, then the consequence of allowing recovery for the risk of cancer is that the statute of limitations will likely bar a claim for actual cancer if the asbestosis claim would have been barred, notwithstanding that the cancer claim was brought well within the applicable limitations period from the time the cancer was or should have been discovered. Thus, denying an asbestosis victim the right to recover damages for the risk of cancer eliminates the statute of limitations trap for an actual cancer victim who chose not to sue when he contracted asbestosis. See Wilson v. Johns-Manville Sales Corp., 684 F.2d 111; Pierce v. Johns-Manville Sales Corp., 296 Md. 656, 464 A.2d 1020.
[9] At least two courts have noted that one method of avoiding the problem is to permit recovery for costs associated with tests to determine whether a feared disease has developed. In the toxic waste case of Ayers v. Jackson Twp., 189 N.J. Super. 561, 461 A.2d 184 (Law Div. 1983), vacated on other grounds, 202 N.J. Super. 106, 493 A.2d 1314 (A.D. 1985), the lower court held that the plaintiff could not recover for enhanced risk of cancer, but could recover medical monitoring costs. The court wrote that "[p]ublic policy thus supports a conclusion that if such illness could be prevented by surveillance, then the tortfeasor should bear the costs. Is it reasonable to compel a plaintiff to suffer the consequence of a serious if not fatal illness before the defendant's tortious conduct is actionable, when reasonable surveillance might prevent the sickness?" Id. at 573, 461 A.2d at 190. Although, as noted, the appellate division, acknowledging its reluctance to subject public entities to "novel causes of action," 202 N.J.Super at 123, 493 A.2d at 1323, vacated the lower court decision on the ground that the probability that the plaintiff would develop cancer was insufficient to justify imposing a lifetime financial burden of medical surveillance on the defendant township, it did nothing to disturb the viability of recovery for medical monitoring costs. See also Friends For All Children v. Lockheed Aircraft Corp., 746 F.2d 816 (D.C. Cir.1984) (medical surveillance damages awarded to Vietnamese orphans for possible injuries sustained during depressurization when plane crashed). The plaintiff in the present case did not seek such damages.
[10] It is not important to decide here whether the Florida rule is that future complication and damage must be proved to a reasonable medical certainty, see Florida Standard Jury Instruction (Civil) 6.1; a probability, see Sullivan v. Price, 386 So.2d 241 (Fla. 1980); or a possibility, see Metropolitan Dade County v. Dillon, 305 So.2d 36 (Fla. 3d DCA 1975). It is, no matter what the required quantum of proof, a prediction.
[11] Indeed, some judges have endorsed a pro rata approach now employed in England which allows a percentage recovery linked to the injured party's chance of incurring the future harm, see, e.g., Jordan v. Bero, 158 W. Va. 28, 62, 210 S.E.2d 618, 640 (1974) (Neely, J., concurring); see King, Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences, 90 Yale L.J. 1353, 1381-87 (1981).
[12] Since we hold infra that this same evidence was admissible to prove the plaintiff's present mental distress from his fear of getting cancer, the defendant can show no harm in its admission absent a showing that the jury awarded future risk of cancer damages. The verdict form, in which the defendant acquiesced, does not reflect this, and since the other items of damages support the amount of the verdict, the defendant thus can prove no harm. See Barhoush v. Louis, 452 So.2d 1075 (Fla. 4th DCA), pet. for rev. dismissed, 458 So.2d 271 (Fla. 1984).
[13] There is a difference between fear of cancer and cancerphobia. The former, which does not require an expert witness to prove its existence, is a nonidiosyncratic response to the knowledge that a person is at risk of contracting the disease, while the latter is a recognized psychiatric illness, which must be testified to by an expert witness. A phobia is an exaggerated, persistent, often irrational fear. Devlin v. Johns-Manville Sales Corp., 202 N.J. Super. 556, 562, 495 A.2d 495, 499 (Law Div. 1985). The present case deals solely with a "fear of" cancer claim.
[14] While the ingestion of a food is a paradigmatic impact, the Florida Supreme Court recently held that while ingestion is required in food cases for negligent infliction of emotional distress claims, "the ingestion requirement is grounded on foreseeability rather than the impact rule." Doyle v. The Pillsbury Co., 476 So.2d 1271 (Fla. 1985) (pending on rehearing) (recovery denied on basis of lack of foreseeability where plaintiff, upon opening a can of peas, observed a large insect, jumped back in alarm, and fell over a chair, suffering physical injuries). Because ingestion has thus been equated with foreseeability in food cases, these cases are not dispositive of the question whether inhalation constitutes impact.
[15] In actuality, fear of cancer. See n. 13 supra.
[16] In Laxton v. Orkin Exterminating Co., 639 S.W.2d 431 (Tenn. 1982), where the plaintiff had ingested negligently contaminated water, the court limited "fear of" damages by confining recovery for such distress "to the time between discovery of the ingestion and the negative medical diagnosis or other information that puts to rest the fear of injury." Id. at 434. In the present case, because the time between discovery of exposure and a negative medical diagnosis could be decades, the Laxton solution does not work.
[17] We do not here decide whether one claiming cancerphobia, see n. 13 supra, must have suffered a physical injury to be entitled to recover.
[18] One of the most cited experts in the field estimates that more than 21 million living Americans have been significantly exposed to asbestos during the past forty years. I. Selikoff, Disability Compensation for Asbestos-Associated Disease in the United States, Environmental Services Laboratory, Mt. Sinai School of Medicine of the City University of New York (1981), cited in Jackson v. Johns-Manville Sales Corp., 750 F.2d at 1337.
[19] As of March 1983, 24,000 claimants had filed asbestos-related suits. It has been estimated that new suits are being docketed at the rate of approximately 500 per month. While this is certainly a tremendous case load, it does not even approach the staggering 21 million figure estimated for the number of Americans significantly exposed to asbestos but who, as yet, do not claim to have asbestosis or cancer, see n. 18 supra. Jackson v. Johns-Manville Sales Corp., 750 F.2d at 1336.
[20] One source states that "[a]ny exposure to [asbestos], even to a relatively minute amount, can precipitate the development of an asbestos related disease. In particular, mesothelioma, an invariably fatal cancer, can result from extremely low exposure levels." Jackson v. Johns-Manville Sales Corp., 750 F.2d at 1336 (citing Selikoff, "Asbestos-Associated Disease," in Asbestos Litigation, 21, 48 (W.Alcorn ed. 1982)). If this is the case, then plaintiffs with asbestosis who, by virtue of having that disease, know they have been injuriously exposed, do in fact have good reason to fear contracting cancer.
[1] Although I believe under the evidence, the trial court could have ruled, as a matter of law, that the plaintiff's claim was time barred. See dissent in Brown v. Armstrong World Industries, Inc., 441 So.2d 1098 (Fla.3d DCA 1983) and compare recent Supreme Court opinion found in Universal Engineering Corp. v. Perez, 451 So.2d 463 (Fla. 1984).